United States District Court
District Of Maine

| | |
|---|---|
| Matthew W. Purinton, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>Moody's Co-Worker Owned, Inc., Shawn Moody, Merritt Thad Moody, and Danielle Moody,<br><br>      Defendants. | Docket No.: |

### Class and Collective Action Complaint For Unpaid Wages; Injunctive Relief Sought; and Demand for Jury Trial

Plaintiff Matthew W. Purinton, on behalf of himself and all other similarly situated employees, brings this action against Moody's Co-Worker Owned, Inc. ("Moody's"), Owner Shawn Moody, President Thad Moody, and Head of Resource Management Danielle Moody and complains as follows:

### Summary of the Action

1. This action seeks to stop Moody's long-time payroll practices that plainly violate the federal and state laws guaranteeing its workers the right

to be paid for all the time they work and to be paid overtime for working over 40 hours in a week.

2. For years, Moody's has maintained a written employment policy directing Mr. Purinton and all other employees to take two unpaid 15-minute breaks during the day. And it has specifically instructed its employees to deduct these two 15-minute rest breaks when recording their hours on their daily timesheets.

3. Moody's failure to pay its hourly workers any wages or overtime pay for these short, 15-minute rest breaks is an open-and-shut violation of Maine and federal wage laws. *See, e.g.,* 29 C.F.R. §§ 785.18, 785.19.

4. In addition, for many years, Moody's has also violated federal and Maine wage laws by requiring Mr. Purinton and all other employees to work on a Saturday in October without any pay. Moody's calls this its "Clean Up" day.

5. On this annual unpaid workday, all employees are compelled to clean their worksites and then attend a mandatory company-wide gathering at one of its locations across the state. Moody's has never paid its hourly workers any wages for their time worked on the Saturday Clean Up days.

6. Mr. Purinton respectfully explained his concerns to Moody's management about the company's failure to pay its employees for Clean Up days. He raised the non-payment issue several times with his immediate

supervisor, and then addressed it directly more than once with President Thad Moody. However, Moody's flatly refused his request that it change its compensation policy and pay its employees for their hours worked on Clean Up days.

7.   Instead, President Thad Moody told Mr. Purinton that this was simply a "philosophical argument" and "the tradition will continue." But there is no "philosophical" or "tradition" exception to the open-and-shut requirements of Maine and federal wage laws that an employer pay its hourly employees for working on a Saturday.

8.   Moody's could easily afford to comply with the wage laws given that owner Shawn Moody's ownership shares in Moody's and the underlying real estate are worth about $44.7 million.

9.   After exhausting all reasonable efforts to persuade Moody's to voluntarily comply with the wage laws, Mr. Purinton brings this action, for himself and other Moody's employees, to ensure Moody's compliance with those laws and the full remedies for violating them.

### Jurisdiction and Venue

10.   This action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the Maine Wages and Medium of Payment laws, 26 M.R.S. §§ 621-A-629B (collectively "Workers' Fair Pay Laws"). This Court has proper

subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights). Under 28 U.S.C. § 1367(a), this Court has proper supplemental jurisdiction over Plaintiff's state law claims, which are so related to the federal claims that together they form part of the same case or controversy under Article III of the United States Constitution.

11.   Venue is proper in the District of Maine under 28 U.S.C. § 1391(b), because Defendant is a Maine corporation and the events giving rise to these claims occurred in Maine, and under 28 U.S.C. § 1391(c) because Plaintiff resides in Maine. Under Rule 3(b) of the Rules of this Court, this action is properly filed in Portland.

## Parties

12.   Plaintiff, Mr. Matthew W. Purinton, is a citizen of the United States and is a resident of Richmond, Sagadahoc County, Maine.

13.   Defendant, Moody's Co-worker Owned, Inc., is a corporation doing business in Maine and organized under the laws of the State of Maine. Moody's has its headquarters in Gorham, Maine in Cumberland County. For most of the past six years, Moody's Co-worker Owned, Inc. has primarily been owned by Defendant Shawn Moody, while employees of Moody's owned about 34 percent of the business through an employee stock ownership plan.

4

14. Moody's has over 200 employees employed at 13 locations across the State of Maine. About two-thirds of Moody's workforce are hourly, non-exempt employees who are protected by the Workers' Fair Pay Laws.

15. Defendant Shawn Moody is the Founder and Controlling Owner of Moody's and is a citizen of the United States and a resident of Gorham, Cumberland County, Maine.

16. Shawn Moody controls the company's long-term planning and real estate acquisition. He and his wife own the real estate of nine of eleven Moody's locations through a separate company, Real Estate Holdings LLC, which is worth about $13.4 million.

17. Shawn Moody is personally involved in and approves all decisions on hiring, discipline, and termination of employees.

18. Defendant Thad Moody is the President of Moody's and is Shawn Moody's brother. Thad Moody is a citizen of the United States and a resident of Gorham, Cumberland County, Maine.

19. As the President of Moody's, Thad Moody is responsible for the day-to-day operations at the company's 13 shop locations across the state.

20. Thad Moody approves all pay raises at the company.

21. Shawn Moody and Thad Moody together exercise authority to deny hourly employees the right to work overtime as disciplinary action.

22. Shawn Moody and Thad Moody together approve the individual budgets prepared by each of the company's 13 locations on a semi-annual basis.

23. Defendant Danielle Moody is the Head of Resource Management and Treasurer of Moody's. She is Shawn Moody's daughter. Danielle Moody is a citizen of the United States and a resident of Springvale, York County, Maine.

24. As the Head of Resource Management, Defendant Danielle Moody is responsible for day-to-day operations concerning the company's finances, payables, receivables, and human resources.

25. Danielle Moody makes annual holiday bonus recommendations for all hourly employees and has final authority to approve or deny the annual holiday bonuses for each location.

26. Danielle Moody has primary responsibility for establishing the annual budgets for each company location. She regularly attends and oversees quarterly profit and loss (P&L) meetings for each location and also regularly attends Employee Stock Ownership Plan (ESOP) valuation meetings at each location.

27. Danielle Moody is responsible for overseeing payroll at the company. Employees are instructed to go to Danielle Moody if they have questions or concerns about payroll discrepancies.

28. Danielle Moody has the authority to adjust data in Moody's payroll system. On at least two occasions, Mr. Purinton has reported inaccuracies in his paycheck to Danielle Moody, and she fixed the errors.

29. Shawn Moody, Thad Moody, and Danielle Moody are responsible for adopting and implementing the company's employment policies, including policies on compensation.

## Jury Trial Demand

30. Under Federal Rule of Civil Procedure 38(b), Plaintiff demands trial by jury on all issues triable to a jury.

## Factual Allegations

31. Mr. Purinton has worked for Moody's for over eight years, from 2011 to the present.

32. Mr. Purinton began working for Moody's on December 31, 2011, as a Collision Repair Technician in its Portland repair shop. After working as Collision Repair Technician in Portland for about four years, Mr. Purinton then served as a Production Manager in South Portland for about two years. Most recently, he transferred to the Augusta location as a Collision Repair Technician and continues to work in that position today.

33. Mr. Purinton is a non-exempt employee paid an hourly rate for his work at Moody's.

34. Moody's pays Mr. Purinton and other hourly employees on a weekly basis for work performed the previous workweek.

35. Moody's standard working hours are Monday through Friday, 8 a.m. to 5 p.m.

36. Moody's written employment policies on "Lunch Periods and Breaks," contained in the Company Handbook Moody's provides to all employees, directs employees to take two 15-minute breaks during the work day and provides that these 15-minute breaks are unpaid:

> "To provide you with an opportunity to rest during the workday, you have an unpaid 30-minute lunch break and two unpaid 15-minute breaks during the day. We ask that the breaks not disrupt business or interfere with customer service. If you need to leave unexpectedly, please let your leader know prior to leaving."

37. Shortly after Mr. Purinton began working at Moody's, in about 2012, his Production Manager in Portland held a group meeting for all employees at the site and instructed them to "punch out" for their rest breaks – that is, to deduct these rest breaks when recording their hours worked on their daily timesheets.

38. For at least the past six years, Mr. Purinton and other hourly employees have complied with Moody's directive that they not request pay for their two 15-minute breaks.

39. Every year Mr. Purinton has worked for Moody's, 2012 through 2019, Moody's has required him and all employees to participate in an annual unpaid Saturday "Clean Up" day around the second or third week of October.

40. On information and belief, Moody's policy of requiring an annual unpaid Clean Up day was instituted by Shawn Moody over twenty years ago, at the company's original Gorham location.

41. During each of these annual Clean Up days, on average, employees spent about six hours cleaning the repair shops where they worked, plus about three hours or more traveling to and attending a mandatory unpaid gathering at one of Moody's sites across the state.

42. Moody's instructed Mr. Purinton and all other hourly employees not to record their hours or submit timecards for Clean Up days.

43. Moody's did not pay Mr. Purinton or any of its hourly employees for their time worked on these Clean Up days.

44. Most if not all hourly employees had already worked 40 hours or more in the workweek that included Clean Up day, not including their hours worked on the Saturday Clean Up day itself.

45. Moody's did not pay Mr. Purinton or any of its hourly, non-exempt employees overtime pay for their hours worked over 40 per week on Clean Up days.

9

46. Several times over the past few years, Mr. Purinton explained his concerns about the lack of pay for Clean Up day with his direct supervisor, J.C. Each time Mr. Purinton asked J.C. if he would be paid for working on the mandatory Saturday Clean Up day, J.C. responded that Mr. Purinton "would be paid the day after Thanksgiving." Mr. Purinton understood this as a reference to the pay Mr. Purinton received for the Friday after Thanksgiving, which Moody's gave employees off as a paid holiday.

47. Moody's 2019 Clean Up day was scheduled for Saturday, October 19, 2019.

48. After his direct supervisor repeatedly deflected his request for payment for working on the upcoming Clean Up day, on October 11, 2019, Mr. Purinton met with President Thad Moody at the Augusta location and reported his concern that the upcoming Clean Up day was unpaid. Mr. Purinton told Thad Moody it was not right to require him to work eight or more hours of overtime on Clean Up day, but then only pay him for eight hours of straight time five weeks late, for the Friday holiday after Thanksgiving. President Moody said he would "do some research" and get back to Mr. Purinton.

49. Shawn Moody, Thad Moody, and Danielle Moody had the authority to change Moody's compensation policy and start paying their hourly employees for Clean Up day, but none of them did so.

10

50. On October 18, 2019, Thad Moody called Mr. Purinton and said that he respected his opinion, but that he regarded this as "a philosophical argument" and that Moody's no-compensation policy for Clean Up day would remain the same.

51. On October 19, 2020, Mr. Purinton worked the mandatory unpaid Clean Up day. He worked about five-and-a-half hours cleaning the Augusta shop, and then drove for about one-and-a-half hours to Lewiston and attended the mandatory unpaid gathering for all employees.

52. On October 22, 2019, Thad Moody told Mr. Purinton that he had spoken with Danielle Moody, and that she had told him hours for Clean Up day were simply "comp time."

53. Mr. Purinton was not paid any straight or overtime wages for his hours worked on Saturday Clean Up day on October 19, 2019. Moody's other hourly employees were also not paid any straight or overtime wages for their hours worked on Saturday Clean Up day on October 19, 2019.

54. On about December 6, 2019, Mr. Purinton received eight hours of pay for the Friday after Thanksgiving, which Moody's gave its employees as a paid holiday.

55. The pay Mr. Purinton received for the paid holiday the Friday after Thanksgiving each year was for a standard eight hours at his regular pay rate. This pay was not based on the hours he actually worked on Clean-

Up day and was not paid at an overtime rate for the hours he worked over 40 in the workweek of Clean-Up day. Moody's other hourly employees were also paid in this same manner for the paid holiday after Thanksgiving.

56. On about December 11, 2019, Mr. Purinton yet again spoke to Thad Moody about his concerns about the lack of pay for Clean Up day. Thad Moody told him "the tradition will continue."

57. Mr. Purinton made repeated efforts, first with his direct supervisor and then with the company President, to explain his concerns about the non-payment of wages and to coax Moody's to fix its illegal policy of not paying for working on Clean Up day. If Moody's had responded by voluntarily fixing its Clean Up day policy, Mr. Purinton would not have brought this lawsuit.

58. There is no bona fide dispute that wages were owed by Moody's to Mr. Purinton and the other non-exempt hourly employees for their time worked on Clean Up day.

59. There is no bona fide dispute that wages were owed by Moody's to Mr. Purinton and the other non-exempt hourly employees for their time worked during their two 15-minute rest breaks during the work day.

60. Mr. Purinton made multiple demands to Moody's for payment of wages for Clean Up day, including directly to President Thad Moody on October 11, 2019, October 22, 2019, and December 11, 2019. Moody's failed to

make payment to Mr. Purinton within eight days after any of those demands for wages.

61. As of the date of this Complaint, Moody's still has not made any payments to Mr. Purinton or similarly situated employees for unpaid wages for daily 15-minute rest breaks or annual Clean Up days.

## Class and Collective Action Allegations

62. The allegations in paragraphs 1-61 are realleged.

63. Under 29 U.S.C. § 216(b), Mr. Purinton seeks certification of a collective action of all similarly situated employees for unpaid wages, unpaid overtime wages, and untimely payment of wages in violation of the federal Fair Labor Standards Act (29 U.S.C. §§ 206, 207).

64. Under Federal Rule of Civil Procedure 23, Mr. Purinton seeks to bring a class action for unpaid wages, unpaid overtime wages, and untimely payment of wages in violation of Maine wage laws (26 M.R.S. §§ 621-A, 626, 626-A, 629, 664).

65. Mr. Purinton seeks to represent a class consisting of all non-exempt, hourly employees who were employed by Moody's and were not timely paid all wages due for two daily 15-minute rest breaks and annual Clean Up days at any time in the past six years.

66. On information and belief, the class described in paragraph 65 includes over 150 employees.

67. The class described in paragraph 65 is sufficiently numerous such that joinder of all persons in the class is impracticable, as required by Federal Rule of Civil Procedure 23(a)(1).

68. As required by Federal Rule of Civil Procedure 23(a)(2), there are questions of law or fact, or both, common to the class, including but not limited to:

    a. All putative class members were non-exempt, hourly employees working for Moody's;

    b. The putative class members were not timely paid for their daily 15-minute rest breaks or their annual Clean Up days;

    c. All putative class members' claims require a determination of whether Defendants violated Maine wage laws by failing to timely pay all wages due for daily rest breaks and annual Clean Up days (26 M.R.S. §§ 621-A, 626, 626-A, 629, 664);

    d. All putative class members' claims require a determination of whether Defendants violated the federal Fair Labor Standards Act by failing to timely pay all wages due for

        daily rest breaks and Clean Up days (29 U.S.C. §§ 206, 207);

    e. All putative class members were injured by Moody's failure to timely pay all wages owed for daily rest breaks and annual Clean Up days.

69. As required by Federal Rule of Civil Procedure 23(a)(3), Mr. Purinton's claims are typical of the class he seeks to represent.

70. Mr. Purinton and his counsel will fairly and adequately protect the interests of the class as required by Federal Rule of Civil Procedure 23(a)(4).

71. Under Federal Rule of Civil Procedure 23(b)(1)(A), class certification is appropriate because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudication with respect to individual members of the class, which would establish incompatible standards of conduct for the party opposing the class.

72. Under Federal Rule of Civil Procedure 23(b)(1)(B), class certification is appropriate because the prosecution of separate actions by individual members of the class would create a risk of adjudication with respect to individual members of the class which would as a practical matter substantially impair or impede their ability to protect their interests.

73. Under Federal Rule of Civil Procedure 23(b)(3), class certification is appropriate because the questions of law or fact, or both, common to the members of the class predominate over any questions affecting only individual members, and because a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

74. Maintenance of this action as a class action will promote the efficient administration of justice by obviating the need of numerous individual members to commence their own actions.

75. Maintenance of this action as a class action will promote the equitable administration of justice since many individual members may not have the resources to independently retain counsel and since pursing claims on an individual basis would be disproportionately expensive.

76. Maintenance of this action as a class action is unlikely to impose burdens upon the Court other than those that would be encountered if the action were to proceed as an individual action on behalf Mr. Purinton.

## Legal Claims

### Count I
### Unpaid Wages and Overtime Against Defendants Moody's, Shawn Moody, Thad Moody, and Danielle Moody in Violation of the Fair Labor Standards Act (29 U.S.C. §§ 206, 207, 216)

77. The allegations in paragraphs 1-76 are realleged.

78. Defendants failed to pay Plaintiff and the putative class members

for all hours worked.

79. Defendants failed to pay Plaintiff and the putative class members overtime wages for all hours worked in excess of forty hours per workweek.

80. Defendants failed to make timely payment of wages to Plaintiff and the putative class members.

81. Defendants' violations of the FLSA have been willful and intentional. Defendants have not made a good faith effort to comply with the FLSA with respect to their compensation of Plaintiff and the putative class.

82. Founder and Owner Shawn Moody, President Thad Moody, and Head of Resource Management Danielle Moody each functioned as Plaintiff's employer within the meaning of the FLSA, 29 U.S.C § 201 *et seq.*, based on their involvement in Moody's day-to-day operations and their direct participation in adopting, implementing and maintaining the unlawful pay practice.

## Count II
### Unpaid Wages and Overtime Against Defendant Moody's in Violation of Maine Law (26 M.R.S. §§ 621-A, 626, 626-A, 629, 664)

83. The allegations in paragraphs 1-76 are realleged.

84. Defendant Moody's failed to pay Plaintiff and the putative class members for all hours worked.

85. Defendant Moody's failed to pay Plaintiff and the putative class

members overtime wages for all hours worked in excess of forty hours per workweek.

87. Defendant Moody's failed to make timely payment of wages to Plaintiff and the putative class members.

87. There is no bona fide dispute that wages were owed to Mr. Purinton and the putative class members for daily rest breaks and annual Clean Up days.

## Prayer for Relief

88. Mr. Purinton, on behalf of himself and all others similarly situated, requests the following relief from this Court:

> a. An order from this Court declaring that Moody's failure to pay Mr. Purinton and the putative class members for their daily rest breaks and annual Clean Up days violated federal and Maine wage laws (29 U.S.C. §§ 206, 207; 26 M.R.S. §§ 621-A, 626, 626-A, 629, 664);
>
> b. An order from this Court enjoining Defendants from continuing to implement their unlawful pay practice regarding daily rest breaks and annual Clean Up days;
>
> c. An order from this Court awarding Mr. Purinton and the putative class members the value of their unpaid wages;

    d. An order from this Court awarding Mr. Purinton and all the putative class members liquidated damages equal to the amount of their unpaid wages under 29 U.S.C. §§ 206, 207, and 216;

    e. An order from this Court awarding liquidated damages equal to twice the amount of their unpaid wages under 26 M.R.S. §§ 626 and 626-A;

    f. An order from this Court awarding interest, costs, and attorneys' fees;

    g. An order from this Court awarding such other relief as this Court deems just and proper.

Respectfully submitted,

Date: August 14, 2020

/s/ Carol J. Garvan
Carol J. Garvan
Johnson, Webbert & Young, LLP
160 Capitol Street, P.O. Box 79
Augusta, Maine 04332-0079
Tel: (207) 623-5110
E-Mail: cgarvan@work.law

/s/ Valerie Z. Wicks
Valerie Z. Wicks
Johnson, Webbert & Young, LLP
160 Capitol Street, P.O. Box 79
Augusta, Maine 04332-0079
Tel: (207) 623-5110
E-Mail: vwicks@work.law

/s/ David G. Webbert
David G. Webbert
Johnson, Webbert & Young, LLP
160 Capitol Street, P.O. Box 79
Augusta, Maine 04332-0079
Tel:  (207) 623-5110
E-Mail: dwebbert@work.law

*Attorneys for Plaintiff*