**EXHIBIT 1**

## Release and Settlement Agreement

Subject to Court approval, Plaintiffs Matthew W. Purinton, Jeffrey Morin, and Jacob P. Cyr ("Named Plaintiffs"), individually, and on behalf of a class of other persons, and Defendants Moody's Co-Worker Owned, Inc., ("Moody's") Shawn Moody, Merritt Thad Moody, and Danielle Moody ("Defendants") have entered into this Release and Settlement Agreement ("Settlement Agreement") to settle *Purinton et al. v. Moody's Co-Worker Owned, Inc. et al.*, United States District Court for the District of Maine No. 2:20-cv-00296-JAW (the "Action"). The signatories to this Settlement Agreement are jointly referred to as the "Parties." The interpretation of this Settlement Agreement will be governed by the statutes and common law of Maine, excluding any that mandate the use of another jurisdiction's laws.

## Background Facts

In the Action, certain Moody's employees raised class claims for unpaid rest breaks and Clean-Up Days on behalf of themselves and others similarly situated ("the Action").

Class Counsel have investigated the facts relating to the claims alleged in this Action and have concluded that (1) numerous disputed issues of fact and law relate to the claims asserted in this Action, (2) substantial expense and time will be necessary to prosecute this Action through trial; (3) further prosecution of this Action will unavoidably create substantial risks, uncertainty, and costs; (4) the relative benefits conferred upon the Settlement Class Members under this

Settlement Agreement are substantial; (5) and thus the Settlement on the terms set forth in this Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class Members.

Defendants deny Plaintiffs' allegations, and further deny any wrongdoing, or legal liability, arising from any facts or conduct alleged in the Action, but have concluded further litigation would be protracted, expensive, and would divert management and employee time and attention; that there are uncertainties and risks inherent in the Action; and that it is appropriate to fully and finally settle the Action in the manner, and upon the terms set forth in this Settlement Agreement, so long as neither this Settlement Agreement, nor any document referred to or contemplated in this Settlement Agreement, nor any action taken to carry out this Settlement Agreement, may be construed as, or may be used as, an admission, concession, or indication by or against Defendants of any fault, wrongdoing, or liability of any kind, and so long as the Settlement Agreement will not be disclosed, referred to, or offered into evidence against Defendants in any further proceeding in this Action, or in any other civil, criminal, or administrative action or proceeding, except for purposes of approving, interpreting, or enforcing the Settlement.

Thus, the Parties agree that, subject to the approval of the Court, the Action is settled under the following terms and conditions:

## Definitions

Wherever used in this Settlement Agreement, and in all of its exhibits, the terms set forth below will have the following meanings:

2

1.      The "Settlement Class" or "Settlement Class Members" means: Named Plaintiffs and all other individuals who either (1) worked as non-exempt, hourly employees at any Moody's location and worked one or more annual Clean Up day at any time from 2014 through 2019 ("Clean-Up Day Subclass"), or (2) worked as non-exempt, hourly employee and either (a) worked at one or more of the following Moody's locations at any time between August 14, 2014 and February 29, 2020: Augusta, Biddeford, Gorham, Lewiston, Portland, Sanford, and Scarborough; or (b) worked at the Wells location at any time between October 1, 2019 and March 31, 2020 ("Rest Break Subclass"). The total number of Settlement Class Members is about 330. See Attachment A.

2.      "Named Plaintiffs" means Matthew W. Purinton, Jeffrey Morin, and Jacob P. Cyr.

3.      "Plaintiffs' Counsel" or "Class Counsel" means David G. Webbert and Braden A. Beard of Johnson & Webbert, LLP.

4.      "Complaint" means the operative complaint filed in this Action.

5.      "Court" means the United States District Court for the District of Maine.

6.      "Final Approval Order" means the Court's Order Granting Final Approval of Class Action Settlement.

7.      "Final Approval Hearing" means the hearing set by the Court at which it will consider the Settlement, arguments and evidence that may be presented by the proponents of the Settlement, and arguments and evidence that may be

presented by any objectors to the Settlement.

8.     "Qualified Settlement Fund" means a settlement fund in the gross settlement amount of Two Million Two Hundred and Fifty Thousand Dollars ($2,250,000.00), which is the amount of funds Defendants will pay to be available in Settlement for: (1) payment to Settlement Class Members, (2) any Service Awards for the Named Plaintiffs, (3) any payment to Class Counsel for attorney's fees, expenses, and costs, and (4) any payment of administration expenses. In addition to the $2,250,000.000, the Qualified Settlement Fund will also include an additional amount estimated by the Settlement Administrator needed to cover the employer share of employment taxes (but not income taxes) related to the Settlement Awards allocated to W-2 wages and Defendant Moody's will be responsible for funding all such estimated employment taxes (but not income taxes). The parties stipulate and agree that this Qualified Settlement Fund (1) will be established by order of and approved by the Court and will be subject to the continuing jurisdiction of the Court; (2) is established to resolve contested claims that have resulted from an event that has occurred and that has given rise to claims asserting liability arising out of an alleged violation of law; (3) is a trust under applicable state law and its assets will be otherwise segregated from other assets of the Defendants and related persons; and (4) qualifies as and will be treated as a qualified settlement fund for federal tax purposes in compliance with Internal Revenue Code Section 468B and 26 C.F.R. (Treas. Regs.) §§ 1.468B-1 to 1.468B-5.

9.     "Net Settlement Fund" means the amount available for payments to

Settlement Class Members from the Qualified Settlement Fund, after deducting all attorney's fees, costs, and expenses, Service Awards, and any payment of class administration.

10.    "Settlement" means the parties' resolution of the matter as to the Settlement Class Members.

11.    "Released Person(s)" means Defendants, and any of their subsidiary, allied, affiliated, and associated companies, predecessors, successors, assigns, parents, corporate siblings, insurers, as well as their officers, directors, employees, members, representatives, attorneys, fiduciaries, and agents, and, with respect to each such entity, all of its past, present, and future employees, officers, directors, members, stockholders, owners, representatives, assigns, attorneys, agents, insurers, and any other persons acting by, through, under, or in concert with, any of these persons or entities, and their successors.

12.    "Plan of Allocation" means the formula for calculating each Located Settlement Class Members' Settlement Award from the Net Settlement Fund. The Net Settlement Fund will be allocated to each Settlement Class Member on a pro rata basis, based on the individualized damages calculations by Plaintiffs' designated damages expert, which are based on the payroll data produced by Defendants concerning Settlement Class Members' dates of employment, recorded weekly hours worked, and payrate, as set forth in Attachments A and B (P000180 - Clean-Up Day calculations and P000181 - 6/17/2022 revised Rest Break calculations).

13.    "Located Settlement Class Member" means each Settlement Class Member for whom the Administrator verifies a current mailing address.

14.    "Opt-out" means a Settlement Class Member who, in accordance with this Settlement Agreement, excludes himself from the Settlement Class and the Settlement, and does not subsequently, in accordance with this Settlement Agreement, rescind that exclusion.

15.    "Released Claims" means any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, arising on, or before, the date of the execution of this Settlement Agreement (the "Release Period"), that were, or could have been, raised in the Action relating to the issues raised in the Second Amended Complaint, including any claims related to alleged unpaid wages, liquidated damages, attorney's fees, costs, expenses, interest, Settlement Administrator costs, Service Awards, and any other monetary claims related to the alleged wage violation, including any claims arising under the Maine Wages and Medium of Payment Act, 26 M.R.S. 621-A *et seq.*, the Fair Labor Standards Act, state, municipal, local, or common laws, rules, and regulations.

16.    "Settlement Award" means the gross payment a Settlement Class Member is entitled to under this Settlement Agreement.

17.    "Settlement Administrator" means, subject to approval by the Court, Simpluris, Inc.

18.    "Notice of Settlement" means the form that, subject to Court approval,

will be provided based on the terms of this Settlement Agreement to each Settlement Class Member to explain the Settlement process. The Notice of Settlement will include a summary of the Action; a summary of the Settlement terms, including the release; a summary of the non-monetary and monetary relief to the Settlement Class, including an estimate of each Settlement Class Member's payment under the Settlement (calculated as if all Settlement Class Members will be receiving payment); a description of how the member may opt out of or object to the Settlement; and contact information for the Settlement Administrator and Class Counsel.

19.    "Effective Date" means the date of the issuance of the Court's Final Approval Order.

## No Admission of Liability

20.    Nothing in this Release and Settlement Agreement, or the consummation of the Parties' settlement, is to be construed as, or deemed an admission of, liability, culpability, negligence, or wrongdoing by Defendants, each of whom expressly deny any such error, wrongdoing, or liability associated with the claims alleged in the Action. This Settlement Agreement is a compromise and will not be construed as an admission of liability, culpability, wrongdoing, or negligence by Defendants or the Released Parties. Likewise, the Settlement Class and Defendants do not concede any claims or defenses that were, or could have been, raised in the Action. The parties merely negotiated and reached a settlement to avoid further disputes and litigation and the attendant inconvenience and expense.

The Settlement Class and Defendants expressly agree to undertake risks that intervening developments in the law may materially strengthen or weaken their respective claims and defenses in the Action, and they have agreed to resolve the Action despite such risks.

## Class Certification

21.     For purposes of the Settlement only, Defendants consent to certification under Federal Rule of Civil Procedure 23 of a class comprised of Settlement Class Members. If the Court does not finally approve the Settlement, Defendants do not waive, and instead expressly reserve, their rights to challenge the propriety of class certification for any purpose as if this Agreement had not been entered into by the Parties. The Parties agree certification for settlement purposes is not an admission by Defendants that Rule 23 class certification would be proper without the Settlement. For purposes of settling this lawsuit, the Parties agree the requisites for establishing class certification for the Settlement Class Members have been, and are, met. If this Settlement Agreement and the Settlement it memorializes are not finally approved by the Court, or if any appeal materially changes the terms of this Settlement Agreement, then Defendants' consent to certify a class may be withdrawn at Defendants' option.

22.     For purposes of the Settlement only, Defendants similarly consent to the Named Plaintiffs serving as class representatives and Plaintiffs' Counsel serving as class counsel.

8

## The Qualified Settlement Fund

23.    Subject to Court approval and the terms of this Settlement Agreement, in consideration for the release of claims and other stated consideration, Defendant Moody's will pay into the Qualified Settlement Fund a gross amount of $2,250,000.00, plus an additional amount to cover the estimated employer share of payroll taxes for W-2 wages as estimated by the Settlement Administrator. The costs for administration of the class settlement will be paid out of the Qualified Settlement Fund.

24.    Monies will be returned from the Qualified Settlement Fund to Defendant Moody's only as follows: If, after final calculation of the employer's share of wage-related payroll taxes for all Settlement Class Members, it is determined the estimated amount of such payroll taxes paid by Defendant Moody's was higher than the actual amount owed by it, the amount Defendant Moody's overpaid into the Qualified Settlement Fund will be returned to Defendant Moody's.

## Incentive Payments

25.    Subject to Court approval, Named Plaintiffs will receive an aggregate incentive award of $45,000 for their services as class representatives in the Action ("Service Awards"). The Service Awards will be in addition to the share to which the Named Plaintiffs are otherwise entitled as Settlement Class Members, and will be payable from the Qualified Settlement Fund. Defendants will not oppose or object to the requested Service Awards.

## Payment To Settlement Class Members

26.     After accounting for attorney's fees, costs, expenses, and service awards, and except as provided below regarding reversions related to Defendant Moody's ESOP fund or to over-estimations for the employer's share of wage payment-related taxes, the remaining portion of the Qualified Settlement Fund must be distributed to members of the Settlement Class who can be located by the Settlement Administrator.

27.     Subject to Court approval, each Located Settlement Class Member, who is not an Opt-out, will receive a payment from the Net Settlement Fund according to the Plan of Allocation. Defendants will not oppose or object to the proposed Plan of Allocation.

28.     Seventy percent of the Net Settlement Fund will be allocated to the Rest Break Subclass, and the remaining thirty percent of the Net Settlement Fund will be allocated to the Clean-Up Day Subclass. Within each subclass, distribution of the Net Settlement Fund to members of the Settlement Class will be on a pro rata basis based on the individualized damages calculations by Plaintiffs' designated damages expert, which are based on the payroll data produced by Defendants concerning Settlement Class Members' dates of employment, recorded weekly hours worked, and payrate. *See* P000180 (Clean-Up Day calculations), attached to Plaintiffs' 8/10/21 Supplemental Disclosures; P000181 (revised Rest Break calculations), provided by Defendants' Counsel on 6/17/22.

29.     Settlement Class members who cannot be located despite the

Settlement Administrator's exercise of due diligence, as described below, will be excluded from eligibility for payment, although they will be bound by the Release and Settlement Agreement.

30.     Other than any payments for Service Awards, the Settlement Administrator will allocate the payments made to each of the Settlement Class Members as (a) 2022 taxable, wage income paid under IRS Form W-2 and subject to ordinary payroll withholdings, and (b) 2022 taxable non-wage income paid under IRS Form 1099. Specifically, 33.33% of each payment made to Settlement Class Members will be paid as 2022 taxable wage income under IRS Form W-2, and 66.67% will be paid as 2022 taxable non-wage income under IRS Form 1099-MISC (box 3 for "other income"). For Settlement Class Members who are part of both the Clean-Up Day Subclass and the Rest Break Subclass, they will receive separate checks for the settlement proceeds related to each Subclass.

31.     The Co-Worker deferral elections for the Moody's 401(k) Plan will not be applicable to the settlement proceeds. Upon approval of this Settlement by the Court in this Action, it is expected that the Plan Administrator for the Moody's 401(k) Plan will determine that this term of the Settlement is sufficient to exclude the payment of the settlement proceeds from those deferral elections. But, if in addition to this provision in the Settlement, the Plan Administrator for the Moody's 401(k) Plan requires it, the Settlement Class Members must, as a condition of receiving settlement payments, confirm that the Plan Administrator for the Moody's 401(k) Plan is authorized to modify their deferral election under the Moody's 401(k)

Plan to exclude the payment of the settlement proceeds.

32.    Except for Defendant Moody's liability for the employer portion of payroll taxes related to wage income reported under IRS Form W-2, Plaintiffs will be responsible for any personal tax liability arising from the allocation of the Qualified Settlement Fund as attorney's fees, costs and expenses, Service Awards, taxable wage income, and taxable non-wage income. Defendant Moody's will be solely responsible for paying the employer share of wage-related taxes for payments made under this Settlement and will pay an amount estimated by the Settlement Administrator to be necessary to cover those payroll taxes.

33.    Settlement Class Members who are (1) no longer employed by Moody's and (2) have not repaid loans made to them by Moody's will have their settlement proceeds first applied to pay off those loans from Moody's. If such a Settlement Class Member disputes the amount owed, then only what the Settlement Class Member acknowledges is owed will be paid out of their settlement proceeds, with Moody's reserving all rights separate from this settlement to pursue the collection of any monies in dispute.

34.    Payments to Settlement Class Members must be issued by the Settlement Administrator, by way of negotiable instrument, from the Qualified Settlement Fund within the time provided by Paragraph 58 below.

### Attorney's Fees, Costs, and Expenses

35.    Defendants will not object to Class Counsel seeking an order from the Court directing payments to Class Counsel from the Qualified Settlement Fund for:

(a) attorney's fees in the amount of 33 1/3% of the Qualified Settlement Fund; and (b) reimbursement for reasonable costs and expenses actually expended (or reasonably expected to be actually expended before the case is completed) by, or on behalf of, the Settlement Class. If the Court award to the Settlement Class's Counsel for costs and expenses exceeds the actual amount of costs and expenses expended by Class Counsel through conclusion of the case by more than $500, then any such additional amount will be distributed to Defendant Moody's ESOP fund. Defendants will not object to the reasonableness of the Settlement Class's request for fees, costs, and expenses.  All attorney's fees, costs, and expenses approved by the Court will be paid from the Qualified Settlement Fund. Any amounts not approved will be re-allocated and paid to the Settlement Class Members by inclusion in the Qualified Settlement Fund for purposes of the Plan of Allocation.

36.     Class Counsel may elect to have all, part, or none of its attorney's fees award paid in periodic payments through a structured settlement arrangement entered into before payment of such fees to Class Counsel. All fees awarded to Class Counsel to be so structured will be paid by the Settlement Administrator, out of the Settlement Fund to an assignment company or companies in accord with appropriate assignment and release agreements ("Assignment Agreements"). Class Counsel has no present right to payment of any structured fees that are the subject of Assignment Agreements. The Settlement Administrator will have the authority to execute documents and take such actions as may be necessary to effectuate the assignment and payment of fees under any Assignment Agreement.

## Release

37.    Upon the Effective Date, each and every Settlement Class Member, other than Opt-outs, will be deemed to, and will actually have, released and discharged all Released Parties for all Released Claims. This release will remain binding on all Settlement Class Members, other than Opt-outs, regardless of whether they have negotiated any payment under this Settlement Agreement, or have been located by the Settlement Administrator.

38.    Each Settlement Class Member will be deemed to, and will actually have, knowingly and voluntarily, waived, released, discharged, and dismissed the Released Claims, with full knowledge of any and all rights they may have, and thereby assume the risk of any mistake in fact, or with regard to any facts that are now unknown to them.

38.    The signatories to this Settlement Agreement represent they are fully authorized to enter into, and bind, the Parties to the terms and conditions of this Settlement Agreement.

## Settlement Administration

39.    The parties have designated Simpluris, Inc. as the Settlement Administrator. The Settlement Administrator's fees will be paid from the Qualified Settlement Fund.

40.    Within seven (7) business days after the Court's preliminary review and Order directing that notice of the proposed Settlement Agreement be issued to the Settlement Class Members, the Parties will provide to the Settlement

Administrator, and to each other, the name, last known U.S. mail and email addresses, and Social Security number for each Settlement Class Member, to the extent that the Parties have such information. The Settlement Administrator will then compare the provided addresses to information available through the U.S. Postal Service, or a similar database, to determine if there is a more recent U.S. mail address for each Settlement Class Member.

41.    Within twenty (20) days of the preliminary approval of the settlement, the Settlement Administrator will send to each Settlement Class member, by both First-Class Mail and email addressed to the most recent addresses as determined by the process described in the preceding paragraph, a Notice of Settlement and an enclosed postage-paid return envelope. The Notice of Settlement will provide that any opt-outs or objections must be post-marked within forty-five (45) days after the date of the mailing of the Notice. This process will use appropriate security protocol to allow the Settlement Administrator to confirm the identity of the Settlement Class member.

42.    If any mailing directed at Settlement Class Members is returned by the U.S. Postal Service as undeliverable within thirty (30) days of mailing, then, within ten (10) days of receipt of the returned mailing, the Settlement Administrator will reasonably use any additional, up-to-date practice to locate a current U.S. mail address for those Settlement Class Members and will re-send to Settlement Class Members, at the newly determined address, the Notice of Settlement, providing notice that any opt-outs or objections must be postmarked

within the later of either forty-five (45) days after the date of the original mailing of the Notice or fifteen (15) days after the date of the follow-up mailing.

43.     If, despite the required effort(s), the Settlement Administrator is unable to locate an accurate current U.S. mail address for a Settlement Class Member within sixty (60) days of preliminary approval of the settlement, such Settlement Class Member will not be considered when apportioning the Qualified Settlement Fund, and the formula for determining the other members' entitlement to their portions of the Qualified Settlement Fund will be applied as if the Settlement Class Member who could not be found is not a Settlement Class Member, although such Settlement Class Member(s) will remain bound by the Release and Settlement Agreement. In this way, it is intended that the entirety of the Qualified Settlement Fund be distributed and not returned to Defendants.

44.     If one or more located Settlement Class Members fails to negotiate a payment within 90 days of issuance, all such uncashed payments up to $10,000 will be paid into Defendant Moody's ESOP fund. If the uncashed payments exceed $10,000, those uncashed payments over $10,000 will be turned over to the State of Maine's unclaimed property fund, although the Settlement Agreement will remain binding on all of the parties, including all members of the Settlement Class.

45.     If, after final calculation of the employer share of wage-related taxes for all located Settlement Class Members, it is determined that the estimated amount of such taxes paid by Defendant Moody's was higher than the actual amount owed by it, the amount Defendant thereby overpaid into the Qualified

Settlement Fund will be returned to Defendant Moody's.

### Opt-Out Procedures and Settlement Class Member Objections

46.    As they will be instructed in the Notice of Settlement, Settlement Class Members must submit written objection(s) to, or a written request for exclusion from, the Settlement to be post-marked no later than forty-five (45) days from the mailing of the Notice of Settlement or fifteen (15) days after the date of a follow-up mailing described in Paragraph 42, whichever is later.

47.    To be valid, any request for exclusion must be timely mailed to the Settlement Administrator and must include: the Settlement Class Member's name and current address; a reference to this Action by case name or case number; and a statement to the effect that they want to be excluded from the Settlement.

48.    To be valid, any written objection to the Settlement must be mailed in a timely manner to the Settlement Administrator and must include: the Settlement Class Member's name and current address; a reference to this Action by case name or case number; a statement to the effect that they object to the Settlement; the basis for the objection; and whether they intend to appear at the Final Approval Hearing. Oral objections will be allowed at the Final Approval Hearing even if the objector did not make a valid written objection.

49.    The Settlement Administrator will provide copies of all received requests to opt-out, and of all objections, to counsel for both parties, no later than seven (7) days after they are received. Class Counsel will be responsible for proposing and submitting any necessary report to the Court regarding Opt-outs,

objections, and requests to appear at the Final Approval Hearing.

50.    Any Settlement Class Member who wishes to rescind a properly
submitted request for exclusion will be instructed in the Notice of Settlement of the
right and process for rescission.

## Settlement Approval

51.    The parties will cooperate and take all necessary steps to effectuate
judicial approval of their intended settlement **in an expedited manner**. More
specifically, Defendants agree to provide the Settlement Administrator and Class
Counsel all information reasonably necessary to confirm the fairness of this
settlement and the distribution of settlement amounts among members of the
Settlement Class. Defendants also consent to the Settlement Administrator
providing all such information to Class Counsel. The appropriate information
includes, but is not limited to, any data not previously provided, such as full contact
information (including email addresses if known), social security numbers, dates of
employment, job titles, and compensation data for all putative class members.

52.    Class Counsel will prepare, Defendants' Counsel will review and
comment on, in good faith and in an expedited manner, and Class Counsel will file
on or about June 24, 2022, (1) a joint motion requesting the Court conduct a
preliminary approval of the parties' proposed class settlement under Fed. R. Civ. P.
23(e)(1)(B) and direct notice of the proposed Settlement to the Settlement Class
Members; (2) find it is likely that the Court will be able to certify the Action as a
Rule 23(b)(3) class action for settlement purposes; (3) appoint Plaintiff's Counsel as

class counsel; and (4) set a fairness hearing date for final approval of the Settlement. This joint motion will propose a preliminary approval order including provisions that:

a. Find that the parties have made the required showing that that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.

b. Direct written notice of the proposed settlement to the class as set forth in the parties' proposed Class Settlement Notice, subject to further hearing and determination under Fed. R. Civ. P. 23(e).

c. Direct the Settlement Administrator to mail (and email when possible) the Notice of Settlement to members of the Settlement Class.

d. Find that the notice provided by this Agreement constitutes reasonable and adequate notice under the circumstances, and that the Notice of Settlement fully satisfies the requirements of due process and the Federal Rules of Civil Procedure.

e. Appoint David G. Webbert and Braden Beard of Johnson & Webbert, LLP, as Class Counsel.

f. Appoint Plaintiffs Matthew W. Purinton, Jeffrey Morin, and Jacob P. Cyr as Class Representatives.

g. Approve the designation of Simpluris, Inc. as Settlement Administrator, and the payment of reasonable settlement administration costs to be paid as set forth in the Settlement Agreement.

h. Provide deadlines for the settlement process consistent with the terms of the Settlement Agreement including that anyone who wishes to be excluded from the Settlement Class must request that the Court exclude the person from the Class by mailing a written objection to the Settlement Administrator, at the special postal box described in the Notice, postmarked no later than forty-five days after the mailing of the Notice or fifteen days after the second mailing.

      i.  Schedule the Final Approval Hearing to be held by the Court to determine whether the proposed Settlement should be finally approved as fair, reasonable, and adequate, whether an order finally approving the Settlement should be entered thereon, and whether to award attorney's fees and expenses to Plaintiffs' counsel and an incentive payment to the Named Plaintiffs.

      j.  Provide that the Released Claims of all Settlement Class Members will be released as of the entry of judgment.

      k.  Provide that no later than ten (10) days after the joint motion for preliminary approval of the Settlement Agreement is filed, Defendants will serve any required notices on the appropriate State and Federal officials under 28 U.S.C. § 1715.

      l.  Provide that the Final Approval Hearing may be continued from time to time by Order of the Court, and without further notice to the Settlement Class.

      m.  Provide that all proceedings in this matter—except those authorized by this Order and in the Settlement Agreement or in furtherance of the proposed settlement—are stayed until further notice.

53.    No later than 10 days after the parties file the joint motion for preliminary approval of the Release and Settlement Agreement, Defendants will serve CAFA notices on the appropriate federal and state officials, and will send a copy of those CAFA notices to Settlement Class's counsel. *See* 28 U.S.C. § 1715.

54.    Before the Final Approval Hearing, Plaintiffs' Counsel will prepare, and Defendants' Counsel will review and comment on, in good faith and in an expedited manner, a joint motion for final approval of the Release and Settlement Agreement. The joint motion for approval of the Settlement Agreement will be filed

no later than 14 days before the Final Approval Hearing and will request the

following:

> a. An Order Granting Final Approval to the Settlement,
> concluding the terms of the Settlement to be fair, reasonable,
> and adequate, and directing consummation of its terms and
> provisions;
>
> b. An Order approving Class Counsel's fees, costs, and
> expenses;
>
> c. An Order approving Service Awards to the Named Plaintiffs;
>
> d. An Order approving payment for services by the Settlement
> Administrator;
>
> e. An Order dismissing the Action on the merits, with
> prejudice, in accordance with the terms of this Release and
> Settlement Agreement;
>
> f. An Order declaring all Settlement Class Members (except
> those who affirmatively opt-out per the Settlement Agree-
> ment) are bound by the release of claims described in this
> Release and Settlement Agreement; and
>
> g. An Order reserving jurisdiction over the construction,
> interpretation, implementation, and enforcement of the
> Settlement, and over the administration and distribution of
> payments under the Settlement.

55.    Plaintiffs' Counsel may also file a motion applying for approval of the

payment of the Settlement Class's attorney's fees, costs, and expenses to be paid

from the Qualified Settlement Fund, with Defendants having the right to review

and request, in good faith, reasonable revisions to this submission. This motion will

be filed no later than 14 days before the Final Approval Hearing.

56.    Plaintiffs' Counsel will prepare the initial draft of any other motions,

the Notice of Settlement, and any other documents related to the parties' resolution

of the claims at issue in the Action, with counsel for Defendants having the right to review and comment on, in good faith and in an expedited manner, these submissions.

### Distribution Of Settlement Payments

57.    Within fourteen (14) days after the Effective Date, Defendant Moody's must deposit all amounts due into the Qualified Settlement Fund maintained by the Settlement Administrator.

58.    Within twenty-five (25) days after the Effective Date, the Settlement Administrator must issue all payments due to Settlement Class Members under this Settlement Agreement from the Qualified Settlement Fund to located Settlement Class members by way of negotiable instrument, along with the appropriate W-2 Forms, (c) W-9 Forms, and (d) 1099-MISC Forms.

59.    Within 105 days after final approval by the Court, the Settlement Administrator will determine the amount of unclaimed or unallocated funds existing, if any. As soon as practicable thereafter, the Settlement Administrator will distribute any such funds as provided in Paragraph 44 of this Agreement.

### Public Comment

60.    The parties will not communicate with the Settlement Class about the proposed settlement, or about any aspect of the Action, during the settlement approval and opt-out period except through the Court-approved written Notice of Settlement (including responding to any inquiries about that Notice from

Settlement Class members to the Settlement Administrator or Class Counsel) or as otherwise approved by the Court.

## Notices

61.     Unless otherwise specifically provided in this Settlement Agreement, all notices, demands, or other communications given under this Settlement Agreement will be in writing, and will be deemed to have been duly given as of the third business day after mailing by U.S. Mail and by email, addressed as follows:

<u>To the Class Representatives or Settlement Class Members:</u>

David G. Webbert
Braden A. Beard
Johnson & Webbert, LLP
P.O. Box 79
160 Capitol Street, Suite 3
Augusta, ME  04332
dwebbert@work.law
bbeard@work.law

<u>To the Defendant:</u>

Richard G. Moon
Douglas P. Currier
Elizabeth T. Johnston
Verrill Dana, LLP
One Portland Square
Portland, ME 04101
rmoon@verrill-law.com
dcurrier@verrill-law.com
ejohnston@verrill-law.com

## Miscellaneous

62.     If the Court unexpectedly rejects the Parties' proposed Release and Settlement Agreement, the Parties agree to work in good faith to resolve any

differences they may have regarding any revised Release and Settlement Agreements to be re-submitted to the Court. If the Parties are unable to resolve any such differences on their own, the Parties further agree to submit all unresolved differences to Magistrate Judge C. Nivison for the purpose of mediating all their disputes about the terms and conditions of any revised Settlement Agreement to be re-submitted to the Court. If, after the Settlement Agreement is approved by the Court, there is a dispute regarding the specific terms and condition of the Release and Settlement Agreement, then the parties must submit all such disputes for final and binding decision to Magistrate Judge John Nivison (or, if he is not available, another Magistrate Judge of the Court).

63.    Provided that the Settlement is approved without material modification or the Parties agree to accept all such material modifications, the Parties agree to waive all appeals, and to stipulate to final class certification of the Rule 23 claims, but only for purposes of implementing the Settlement.

64.    Settlement Class Members acknowledge that Defendants make no representations about the correct tax treatment of any sums payable to the Settlement Class Members under this Settlement Agreement, none of which is the responsibility of the Defendants.

65.    All the Parties acknowledge they have been represented by competent, experienced counsel throughout all negotiations before the execution of this Settlement Agreement, and this Settlement Agreement is made with the consent and advice of counsel who have jointly prepared this Settlement Agreement.

66.    The Parties agree to use their best, reasonable efforts, and to fully cooperate with each other to implement and expeditiously effectuate the terms of this Settlement Agreement.

67.    This Settlement Agreement may be executed in counterparts, each of which will be deemed an original, and, when taken together with other signed counterparts, will constitute one agreement, which will be binding on, and effective as to, all of the Parties. Photographic or digital copies of signed counterparts may be used instead of the original.

68.    This Settlement Agreement will be binding on, and inure to the benefit of, the successors of each of the Parties, including each Settlement Class Member who does not opt out of the Settlement.

69.    The Parties believe this is a fair, reasonable, and adequate Settlement Agreement, and have arrived at this Settlement Agreement after the exchange of key information, and through considerable arm's-length negotiations under the direct supervision of the Court, including a Settlement Conference before U.S. Magistrate Judge John Nivison, and after considering all relevant factors, both present and potential.

## Entire Agreement

70.    This Settlement Agreement, entered into by the Named Plaintiffs, for themselves and all the Settlement Class Members, and Defendants, constitutes the entire agreement between the Parties concerning the subject matters addressed in

this Settlement Agreement. No extrinsic, oral, or written representations or terms will modify, vary, or contradict the terms of this Settlement Agreement.

71. Except in writing, and signed by Plaintiffs' Counsel and Defendants' Counsel, this Settlement Agreement and its attachment may not be changed, altered, or modified.

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement as of the date indicated below:

Date: 6/20, 2022

By: _____
Shawn Moody
*On behalf of Moody's Co-Worker Owned, Inc.*

Date: 6/20, 2022

By: _____
Shawn Moody

Date: 4/20, 2022

By: _____
Merritt Thad Moody

Date: 6/20, 2022

By: _____
Danielle Moody

Date: _____, 2022

By: _____
Matthew W. Purinton, Class Representative

Date: _____, 2022

By: _____
Jeffrey Morin, Class Representative

Date: _____, 2022

By: _____
Jacob P. Cyr, Class Representative

26

this Settlement Agreement. No extrinsic, oral, or written representations or terms

will modify, vary, or contradict the terms of this Settlement Agreement.

     71.   Except in writing, and signed by Plaintiffs' Counsel and Defendants'

Counsel, this Settlement Agreement and its attachment may not be changed,

altered, or modified.

     IN WITNESS WHEREOF, the undersigned have duly executed this

Settlement Agreement as of the date indicated below:

Date: 6/20, 2022     By: _____
                   Shawn Moody
                   *On behalf of Moody's Co-Worker Owned, Inc.*

Date: 6/20, 2022     By: _____
                   Shawn Moody

Date: 4/20, 2022     By: _____
                   Merritt Thad Moody

Date: 6|20, 2022     By: _____
                   Danielle Moody

Date: 6/27, 2022     By: _____
                   Matthew W. Purinton, Class Representative

Date: _____, 2022     By: _____
                   Jeffrey Morin, Class Representative

Date: _____, 2022     By: _____
                   Jacob P. Cyr, Class Representative

this Settlement Agreement. No extrinsic, oral, or written representations or terms will modify, vary, or contradict the terms of this Settlement Agreement.

71.     Except in writing, and signed by Plaintiffs' Counsel and Defendants' Counsel, this Settlement Agreement and its attachment may not be changed, altered, or modified.

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement as of the date indicated below:

Date: 6/20, 2022          By: _____
                               Shawn Moody
                               *On behalf of Moody's Co-Worker Owned, Inc.*

Date: 6/20, 2022          By: _____
                               Shawn Moody

Date: 4/20, 2022          By: _____
                               Merritt Thad Moody

Date: 6/20, 2022          By: _____
                               Danielle Moody

Date: _____, 2022    By: _____
                               Matthew W. Purinton, Class Representative

Date: 6/27, 2022          By: _____
                               Jeffrey Morin, Class Representative

Date: _____, 2022    By: _____
                               Jacob P. Cyr, Class Representative

26

this Settlement Agreement. No extrinsic, oral, or written representations or terms will modify, vary, or contradict the terms of this Settlement Agreement.

71.    Except in writing, and signed by Plaintiffs' Counsel and Defendants' Counsel, this Settlement Agreement and its attachment may not be changed, altered, or modified.

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement as of the date indicated below:

Date: _____, 2022        By: _____
                                    Shawn Moody
                                    *On behalf of Moody's Co-Worker Owned, Inc.*

Date: _____, 2022        By: _____
                                    Shawn Moody

Date: _____, 2022        By: _____
                                    Merritt Thad Moody

Date: _____, 2022        By: _____
                                    Danielle Moody

Date: _____, 2022        By: _____
                                    Matthew W. Purinton, Class Representative

Date: _____, 2022        By: _____
                                    Jeffrey Morin, Class Representative

Date: June 27, 2022        By: _____
                                    Jacob P. Cyr, Class Representative

26