United States District Court
District of Maine

| | |
|---|---|
| Matthew W. Purinton, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Moody's Co-Worker Owned, Inc., et al.,<br><br>Defendants. | No. 2:20-cv-00296-JAW |

**Plaintiffs' Unopposed Motion for Approval of Attorney's Fees and Reimbursement of Case Expenses**

As provided in the proposed Settlement Agreement, this is an unopposed motion for attorney's fees of one-third of the total settlement of $2,250,000, plus reimbursement of litigation expenses reasonably incurred on behalf of the Settlement Class (including the costs of settlement administration). *See* Fed. R. Civ. P. 23(h), 54(d)(2); Local Rule 54.2, 54.3; ECF No. 57-1 (Settlement Agreement), ¶ 35.

This class action was filed more than two years ago and has proven to raise complex and challenging factual and legal issues. Class Counsel has already devoted over 1,200[1] hours of attorney and paralegal time to (1) prosecuting the

[1] The final number of hours will be higher because of the time required to prepare for and represent the Class at the final approval hearing and to oversee the administration of the settlement and distribution of settlement benefits following the anticipated final approval of the settlement.

claims for the Class—which entailed multi-layered disputes concerning class certification given significant variations in practices across an employer's worksites, as well as statutory interpretation questions about the amount of wages owed under Maine's unpaid wage laws—and (2) negotiating the proposed Settlement, which required mediation through a nationally recognized private mediator, a judicial settlement conference before Magistrate Judge Nivison, and extensive follow-up negotiations through Judge Nivison. Aside from an initial retainer fee of $1,250 from Matthew Purinton to evaluate his potential legal claims when he first contacted Class Counsel in 2019, Class Counsel's efforts have been without compensation thus far, as this case was litigated on a contingent fee basis, with no guarantee of recovery.[2]

With the invaluable assistance of Judge Nivison, Class Counsel ultimately achieved a settlement that would award substantial damages to Class Members amounting to about 69% of the total claimed unpaid wages for the Class. Under the proposed Settlement, the Defendants would pay $2,250,000 into a Settlement Fund, with $1,407,464.13 of that going to Class Members. Class Members would receive an average of more than $5,000 in damages, with damages as high as $19,000 to $20,000 in some cases.

[2] Because of the significant investment of time and resources required for a small firm to prosecute this case, accepting this case precluded Class Counsel from pursuing other paying work. *See* Declaration of David G. Webbert, ECF No. 66-1, ¶ 8.

After the Court-approved Notice to the Class of the proposed settlement, Notice was successfully delivered to all 274 Class Members (or their next of kin).[3] When the standard address location services did not find about eight Class Members, Class Counsel worked with the Settlement Administrator to pursue enhanced individualized search efforts, including a special service for locating missing persons, and ultimately all Class Members were located. None of the Class Members has objected to the settlement terms, which include the proposed payments to Class Counsel of a one-third contingent fee and reimbursement of case expenses, and only one Class Member opted out of the settlement.[4]

In settlements of wage and hour and other employment class actions, the District of Maine has regularly approved a one-third contingent fee for Class Counsel using the First Circuit's preferred percentage-of-the-fund approach.

As authorized by the Settlement Agreement, and as set forth in the Court-approved Class Notice, Class Counsel respectfully requests that this Court follow those precedents and award them a (1) a one-third contingent fee of $750,000 out of the $2,250,000 Settlement Fund; and (2) reimbursement of itemized case expenses of $47,535.87, which includes $8,800 for payment of the expert services of Class Action Settlement Administrator Simpluris, Inc.

[3] The Motion for Preliminary Approval referred to a total of about 330 Class Members. After further analysis and consolidation of the lists for the Rest Break Sub-Class and the Clean-Up Day Sub-Class, the Parties determined that there are 274 total Class Members.

[4] The deadline for Class Members to object or opt out is today, December 12, 2022. Class Counsel will notify the Court at the December 19, 2022 fairness hearing if any objections or opt-out requests are received after the date of this filing.

## Argument

### I. The Three Signed Contingent Fee Agreements, the Settlement Agreement, and the Court-Approved Class Notice All Support a Reasonable Contingent Fee of One-Third of the Settlement Fund.

Class Counsel are entitled to reasonable attorney's fees as compensation for their work successfully prosecuting this case for unpaid wages under Maine law for the Class of 274 employees of Moody's Coworker-Owned, Inc. *See, e.g.*, *Conant v. FMC Corp.*, No. 2:19-CV-00296-JDL (D. Me. Sept. 1, 2020), ECF No. 42 (approving as reasonable an award of attorney's fees of one-third of common settlement fund, which was $695,000, plus $20,649.30 in expenses, in unpaid wages class action); *O'Connor v. Oakhurst*, 2:14-00192-NT, 2018 WL 3041388 (D. Me. June 19, 2018) (approving as reasonable an award of attorney's fees of one-third of common settlement fund, which was $1.67 million, plus $50,000 in expenses, in unpaid wages class action).

This Court has preliminarily approved the Settlement Agreement (*see* ECF No. 60), which provides that Class Counsel will request, and Defendants will not object to, an award of attorney's fees of 33 1/3% of the $2,250,000 Settlement Fund, as well as reimbursement of Class Counsel's litigation costs and expenses actually or reasonably expected to be expended before the case is completed. *See* ECF No. 57-1 (Settlement Agreement), ¶ 35. This is consistent with the fee agreements Class Counsel signed with the three Class Representatives, which provide for attorney's fees of one-third of the total amount collected from Defendants and reimbursement of all reasonable expenses.

And the Court-approved Notice sent to the 274 Class Members provides that Class Counsel will request "1/3 of the Settlement Amount, plus reimbursement of costs and expenses of prosecuting this action. The fees and expenses awarded by the Court will be paid out of the Settlement Amount." *See* ECF 57-4 (Proposed Notice); ECF No. 60 (Order approving Proposed Notice).

Further, Notices were successfully delivered to all 274 Class Members or their next of kin, not a single Class Member has objected to the requested attorney's fees or expense reimbursement in the Settlement, and only one Class Member opted out of the Settlement.[5] Declaration of Mary Butler, Simpluris, Inc. ("Butler Decl."), ECF No. 66-3, ¶¶ 10-12. Similarly, no State Attorney General has filed any objection after notice of the proposed settlement was served on July 11, 2022.

## II. The Percentage Method Is the First Circuit's Preferred Approach for Awarding Attorney's Fees in Common Fund Cases.

In the First Circuit, the "prevailing praxis" for assessing a reasonable fee award in common fund class action cases, including wage and hour and other employment class actions, is to use the percentage-of-the-fund ("POF") approach.[6] As this Court has recognized, "the percentage of the fund method is the prevailing approach used in common fund cases" because of the "distinct advantages for using

[5] *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012) (lack of objections lends support to fee award approval).
[6] *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995).

it in such cases."[7] These advantages include:

- it is less burdensome for the court to administer;
- it incentivizes efficient behavior by counsel; and
- it "better approximates the workings of the marketplace" by focusing on results rather than process.[8]

Other advantages include that the POF method spreads attorney's fees and expenses "proportionately among those benefited by the suit," and it "encourages capable plaintiffs' attorneys to aggressively litigate complex, risky cases . . . rather than settling lower and earlier than would be in the best interests of the class members they represent."[9] The American Law Institute's principles on aggregate litigation likewise express a strong preference for the POF method in common fund cases. *Principles of the Law: Aggregate Litigation* (ALI 2010) § 3.13(b)-(c).

In short, the POF method is well recognized in the First Circuit as the best way to assess fees in a common fund case, especially uncertain and risky cases like this one.

## III. The District of Maine Has Consistently Approved a Fee of One-Third of the Common Fund in Class Action Cases.

This Court has regularly approved a one-third contingent fee in class action

[7] *In re Compact Disc Minimum Advertised Price Antitrust Litigation* ("*Compact Disc 1*"), 216 F.R.D. 197, 215 (D. Me. 2003) (following First Circuit's preference for POF approach) (citing *In re Thirteen Appeals*, 56 F.3d at 307).

[8] *In re Thirteen Appeals*, 56 F.3d at 307-08; *see also Compact Disc 1,* 216 F.R.D. at 215-16 (adopting POF method as preferred approach).

[9] *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 265 (D. N.H. 2007) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

settlements of wage and hour and other employment civil rights cases. *See, e.g.*, *Conant*, No. 2:19-CV-00296-JDL, ECF No. 42 (approving award of attorney's fees of one-third of common settlement fund plus expenses in state law unpaid wages class action); *O'Connor*, 22018 WL 3041388 (awarding attorney's fees of one-third of common settlement fund, plus $50,000 in expenses, in class action for unpaid wages under Maine state law); *Curtis v. Scholarship Storage Inc.,* No. 2:14-cv-303-NT, 2016 WL 3072247, at *3-4 (D. Me. May 31, 2016) (awarding one-third fee in class action for unpaid wages); *Scovil v. FedEx Ground Package Sys.*, 1:10-CV-515-DBH, 2014 WL 1057079, at * 5 (D. Me. Mar. 14, 2014) (awarding one-third of common fund in class action for unpaid wages, and citing multiple settlements in accord); *Applegate v. Formed Fiber Techs., LLC*, No. CIV.A. 2:10-00473, 2013 WL 6162596 (D. Me. Nov. 21, 2013) (awarding one-third fee of common fund in WARN Act class action for severance pay); *Bennett v. Roark Cap. Grp., Inc.*, No. 2:09-CV-00421-GZS, 2011 WL 1703447 (D. Me. May 4, 2011) (awarding one-third fee of common fund in WARN Act class action for severance pay, mass-layoff class action); *McCormick v. Festiva Development Group, LLC*, 2:09-CV-00365-GZS, 2011 WL 2457883 (D. Me. June 20, 2011) (approving one-third fee of common fund, plus $20,000 for expenses, in class action for unpaid wages); *Sylvester v. Cigna Corp.*, 401 F. Supp. 2d 147, 151 (D. Me. 2005) (awarding one-third fee of common fund in health insurance consumer class action).[10]

---

[10] A one-third fee has also commonly been approved by other courts throughout the First Circuit. *See, e.g., Matamoros v. Starbucks*, C.A. No. 08-10772 (D. Mass. May 7, 2008), Docket Nos. 159, 169 (settlement of claims under state wage law); *Crenshaw v. Texas Roadhouse, Inc., et al.*, C.A. No. 11-10549-JLT (D. Mass. Apr. 5, 2011), Docket Nos. 53, 56

The Court in these cases analyzed a series of factors that similarly support an award of a one-third fee in this case. **First**, the three representative Plaintiffs "actually engaged this law firm to represent them and in fact signed contingent fee agreements providing that individually they would pay one-third of the recovery."[11] *See* Declaration of David G. Webbert ("Webbert Decl."), ECF No. 66-1, ¶ 3. The willingness of three Class Members to enter into a one-third contingent fee agreement provides substantial support for a judicial finding that a one-third contingent fee in this case is "what the market rate is."[12]

Reasonable contingent fee agreements, such as the agreements signed in this case, benefit access to justice for individuals like Plaintiffs, who could not have paid counsel on an hourly fee basis and otherwise might not be able to find counsel to represent them on their unpaid wage claims. As the Supreme Court has explained, "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate."[13]

**Second**, this Court has repeatedly taken judicial notice that "contingent fees of one-third are common" in the marketplace and that reality is a "market signal" of

(same); *Cutter v. HealthMarkets, Inc., et al.*, C.A. No. 10-11488-JLT (D. Mass. July 2, 2010), Docket Nos. 77, 80 (settlement of claims for unlawful misclassification under state law and denial of wages); *Kiely v. TripAdvisor LLC*, C.A. No. 08-11284-MLW (D. Mass. filed July 2, 2008), Docket Nos. 51 and 52 (settlement of claims for unlawful misclassification under state law and denial of wages).

[11] *Scovil,* 2014 WL 1057079, at * 5.

[12] *Scovil,* 2014 WL 1057079, at * 5.

[13] *Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983).

the reasonableness of a one-third contingent fee in a common fund class action like this.[14] In Maine and elsewhere, contingent fees of between one-third and 40% are customary in civil rights, employment, and wage and hour cases. *See, e.g.*, *Conant*, No. 2:19-CV-00296-JDL (D. Me. Sept. 1, 2022), ECF No. 42 ("[A] one-third contingent fee is common in class action employment and civil rights cases."); *Scamman v. Shaw's Supermarkets, Inc.*, No. BCD-CV-2018-09 (Super. Ct. Apr. 26, 2019) (approving as reasonable attorneys' fee award of one-third of common fund, plus expenses); *O'Connor,* 2018 WL 3041388, at *4 ("A one-third contingent fee is common in class action wage-and-hour cases."); *Quint v. A. E. Staley Mfg. Co.*, 245 F. Supp. 2d 162, 178 (D. Me. 2003) (noting that 40% contingency fee was "customary" and "generally sought" in Maine employment litigation with statutory fees); *see also Venegas v. Mitchell*, 495 U.S. 82, 84 (1990) (upholding 40% contingent fee in civil rights case).

Given the significant risk that Plaintiffs would not prevail in this case, Plaintiffs likely would have found it extremely difficult to find competent counsel willing to handle their case for less than a one-third contingency fee rate.

**Third**, this case was complex and uncertain. As noted in Plaintiffs' consent motion for final approval of the Settlement, this case involved serious disputes about uniformity across the Class, both between Moody's locations and within the employees at each location, and resolution of these legal questions in Defendant's

[14] *Scovil,* 2014 WL 1057079, at * 5 (D. Me. Mar. 14, 2014); *see also In re TRS Recovery Servs., Inc.*, No. 2:13-MD-2426-DBH, 2016 WL 543137, at *9 (D. Me. Feb. 10, 2016) ("I have taken judicial notice that contingent fees of one-third are common, and I have evaluated whether the proposed fee is consistent with like settlements in neighboring jurisdictions.").

favor could have prevented Plaintiffs from certifying a class action, meaning potential Class Members would be left to pursue their individual claims. Class Counsel engaged in a thorough investigation of the claims, defenses, and damages at issue, including retaining an expert witness to analyze the damages owed to each Class Member, propounding carefully tailored document requests and interrogatories to Defendants—resulting in the production of Defendants produced over 54,000 pages of documents—and engaging in substantial informal discovery with Defendants. Webbert Decl. ¶¶ 5-6. And Class Counsel diligently prepared for and represented the Class during multiple settlement negotiations both before a private mediator and a Judicial Settlement Officer of this Court, Magistrate Judge Nivison. Webbert Decl. ¶ 7. Considerable time, labor, and skill were required for Class Counsel to effectively litigate this case to its successful conclusion.[15]

**Fourth**, over this case's history, Class Counsel has expended about 1,200 hours of attorney and paralegal time—an aggregate lodestar of more than $500,000 (as calculated by Class Counsel at their current standard hourly rates)—and has already incurred more than $38,735 in out-of-pocket costs and expenses, not including its contractual obligation to pay the administration fee of Simpluris. Webbert Decl. ¶¶ 8-11.[16] Moreover, this preliminary lodestar amount does not

---

[15] *Sylvester v. Cigna Corp.,* 401 F. Supp. 2d 147, 151 (D. Me. 2005) (noting factors of "the novelty and difficulty of the questions involved and the skill requisite to properly perform the legal services" when making fee award from common fund); *see also Applegate,* 2013 WL 6162596 (same).

[16] For the lodestar cross-check, the lodestar multiplier "need not fall within any pre-defined range" and the court need not engage in this analysis with "mathematical precision" or "bean-counting," but may rely on summaries of hours submitted by the

include the future time that will be required preparing for and participating in the final approval hearing. Nor does it include the further work that will be necessary to implement the Settlement following its anticipated final approval. In Class Counsel's experience, overseeing the final steps of the settlement process requires an ongoing commitment and a significant additional investment of time.[17]

Due to this massive investment of time and resources by a small firm, acceptance of this case clearly precluded acceptance of other work by Class Counsel.[18] The Court may, "but is not required" to, look at Class Counsel's lodestar as "a check or validation of the appropriateness of the percentage of funds fee."[19] Here, the optional lodestar cross-check analysis convincingly confirms that Plaintiffs' requested fee is appropriate. The requested one-third fee is only about 1.5 times counsel's lodestar fee. This multiplier is well within the range of typical multipliers awarded in similar cases.[20]

---

attorneys, rather than actual billing records. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005).

[17] *See, e.g.*, *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time.").

[18] *Sylvester v. Cigna Corp.,* 401 F. Supp. 2d 147, 151 (D. Me. 2005) (noting factors of "the time and labor required" and "the likelihood that acceptance of the particular employment will preclude other employment by the lawyers or their law firms" when making fee award from common fund); *see also Applegate v. Formed Fiber Techs., LLC*, Civil Action No. 2:10-00473-GZS, 2013 U.S. Dist. LEXIS 166171, at *2-3 (D. Me. Nov. 21, 2013) (same).

[19] *See In re Compact Disc Minimum Advertised Price Antitrust Litigation* ("*Compact Disc I*"*),* 216 F.R.D. 197, 215-16 (D. Me. 2003); *see also* Principles of the Law: Aggregate Litigation (ALI 2010) §3.13(b) (noting that court "may consider using the 'lodestar' approach as a cross-check" in appropriate cases).

[20] *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298-299, 303-04 (3rd Cir. 2005) (finding no abuse of discretion when district court-approved attorney's fees with a "fairly common" lodestar multiplier of 4.07, despite objection that lodestar multiplier could not be above 3); *O'Connor*, 2018 WL 3041388, at *4 (awarding one-third contingent fee of

**Fifth**, the $2,250,000 Settlement Fund is an excellent result and is well within the range of expected recovery if this case had proceeded to trial.[21] If the Settlement is approved, the Class Members will each receive a pro rata share representing a substantial percentage—more than 2/3—of their actual unpaid wages; on average, Class Members will receive about $5,000 each. Webbert Decl. ¶ 12. And the Settlement Agreement provides that except for possible overestimates of expense reimbursements or unclaimed settlement payments, the entire Settlement Fund will be distributed to the Class Members, with no residual amount reverting to Defendants. Settlement Agreement ¶¶ 35, 43, 44.[22]

---

$1,666,666.67 when counsel's lodestar was $960,000, for multiplier of 1.6); Theodore Eisenberg et. al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 965 (2017) (finding that between 2009 and 2013, the mean multiplier in common fund cases in the First Circuit was 2.4); *Nilsen v. York Cnty.*, 400 F. Supp. 2d 266, 286 (D. Me. 2005) ("The 1.6 multiplier in this case is lower than all but one of the strip search cases, and lower than the average multiplier of 1.89 found in class actions generally, and thus it is not unreasonable."); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) ("A multiplier of 2.02 is appropriate.").

[21] *Sylvester,* 401 F. Supp. 2d at 151 (noting factor of "the amount involved and the results obtained" when making fee award from common fund); *Applegate*, 2013 WL 6162596 (same).

[22] The Joint Motion to Give Notice to the Class of Proposed Settlement and to Make Further Orders as Part of the Settlement Approval Process stated that, "If, despite the Settlement Administrator's due diligence, a Settlement Class Member cannot be located or fails to negotiate payment within 90 days of issuance, the uncashed payments up to $10,000 will be paid into Defendant Moody's ESOP fund." ECF No. 57 at 6. To clarify, that provision would only apply to a failure to locate a Class Member after final approval and apportionment of the settlement. Under the Settlement Agreement, if a Class Member cannot be located within 60 days of preliminary approval (which is December 17, 2022), that Class Member will not be considered in apportioning the Settlement, meaning their potential settlement payment will be divided among the other Class Members. Settlement Agreement ¶ 43. "In this way, it is intended that the entirety of the Qualified Settlement Fund be distributed and not returned to Defendants." *Id.*

**Sixth**, the nature and length of the professional relationship with the Plaintiffs further demonstrates the reasonableness of the proposed fee award.[23] Class Counsel has been representing all three Named Plaintiffs for over two years, including over three years with the original named Plaintiff, Matthew Purinton. And Class Counsel has maintained close contact with each of the Named Plaintiffs throughout the litigation. Webbert Decl. ¶ 3.

**Seventh**, Class Counsel's experience, reputation, and skills weigh in favor of the requested fee award.[24] This Court has addressed this factor in previous class action settlements, finding that Plaintiffs' counsel:

> have extensive class action experience and have successfully represented plaintiffs in class actions in this Court for many years. In addition, in this and other cases, counsel have consistently demonstrated that they are highly skilled and knowledgeable practitioners.

*Conant v. FMC Corp.*, No. 2:19-CV-00296-JDL, 2020 WL 1482634, at *3 (D. Me. Mar. 27, 2020), *report and recommendation adopted*, No. 2:19-CV-00296-JDL, 2020 WL 2145318 (D. Me. May 5, 2020); *see also O'Connor v. Oakhurst Dairy*, No. 2:14-00192-NT, 2018 WL 3041388 (D. Me. June 19, 2018); ECF No. 57-5 (Declaration of David G. Webbert).

**Eighth,** Class Counsel filed this Action on a wholly contingent basis, taking on the substantial risk that they would not be compensated for their time and

---

[23] *Sylvester,* 401 F. Supp. 2d at 151 (noting factor of "the nature and length of the professional relationship with the client" when making fee award from common fund); *Applegate,* 2013 WL 6162596 (same).

[24] *Sylvester.,* 401 F. Supp. 2d at 151 (noting factor of "the experience, reputation and ability of the lawyer or lawyers performing the services" when making fee award from common fund); *Applegate,* 2013 WL 6162596 (same).

accepting the certain risk that they would not be paid unless and until the case was favorably resolved.[25] Indeed, had the Court resolved questions regarding the uniformity of the Class in Defendant's favor, Class Counsel would have been forced to proceed with attempting to litigate individual claims, if at all.

## IV. Class Counsel Is Entitled to Reimbursement of Their Expenses.

Class Counsel request reimbursement of $47,535.87 for actual expenses incurred or reasonably expected to be incurred, to be paid from the Settlement Fund. Courts routinely allow counsel to recover their reasonable out-of-pocket expenses.[26] The $47,535.87 in expenses include $38,735.87 incurred for expert statistical analysis fees, expert consultant electronic discovery and document management services, mediation fees, online legal research services (Westlaw), legal research on key case issues, missing person locator services, and the complaint filing fee. Webbert Decl. ¶ 11 and Exh. A (Case Expense Itemization), ECF No. 65-2. In addition, the Settlement Administrator currently estimates that the total costs for its services will be about $8,800.

## Conclusion

Class Counsel has achieved a highly favorable settlement for the Class, providing for a substantial recovery of their claims for unpaid wages, despite significant obstacles. Given the substantial risks taken by Class Counsel and the

---

[25] *See Sylvester.,* 401 F. Supp. 2d at 151 (noting factor of "whether the fee is fixed or contingent" as favoring larger fee award from common fund); *Applegate*, 2013 WL 6162596 (same).

[26] *See Nilsen*, 400 F. Supp. 2d at 284.

excellent result—as confirmed by the lack of any objection to the proposed Settlement and only a single opt out—this Court should approve Class Counsel's request for a standard attorney's fees award of one-third of the common fund, or $750,000, plus reasonable expenses of $47,535.87, for a total payment to Class Counsel of $797,535.87.

Date: December 12, 2022

Respectfully submitted,

/s/ David G. Webbert
David G. Webbert, Esq.
Braden A. Beard, Esq.
Johnson & Webbert, LLP
160 Capitol St., Suite 3
Augusta, ME 04330
Telephone: (207) 623-5110
dwebbert@work.law
bbeard@work.law

*Class Counsel for Plaintiffs*

**Certificate of Service**

I hereby certify that on December 12, 2022, I electronically filed this document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ David G. Webbert
David G. Webbert