United States District Court
District Of Maine

| |  |
|---|---|
| Matthew W. Purinton, et al., on behalf of themselves and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>Moody's Co-Worker Owned, Inc., et al.,<br><br>        Defendants. | No. 2:20-cv-00296-JAW |

**Joint Brief Concerning *Murray v. Grocery Delivery E-Services USA, Inc.***

At the Final Settlement Approval Hearing on December 19, 2022, the Court asked the parties to brief whether a recent decision by the First Circuit, *Murray v. Grocery Delivery E-Services USA, Inc.*, No. 21-1931, 2022 WL 17729630 (1st Cir. Dec. 16, 2022), affects the Court's analysis of whether to approve the settlement in this case. As explained below, the parties agree that the *Murray* decision does not limit, and in many ways confirms, the Court's ability to approve this settlement.

**Summary**

*Murray* found that a proposed class action settlement could not be approved until the three subclasses had separate representation when (1) one of the subclasses had claims subject to a "definitive" defense, "which essentially extinguishes their value," *id.* at * 8, yet the proposed settlement had them receiving

1

equal shares with the subclasses having viable claims; and (2) counsel could neither back up their potentially saving point that because "the groups of class members 'overlapped,' their interests were more or less the same," *id.* at *7; (3) nor could they articulate a "clear-cut" explanation for the relative value of the separate claims of the subclasses. On the other hand, this proposed settlement does not suffer from any of those fatal flaws: (1) no "definitive" defense applies to the claims of either subclass; (2) the record shows that a large majority of the class members belong to both subclasses; and (3) counsel has articulated a "clear-cut" explanation for the relative value of the claims.

## Argument

*Murray* concerned a class action settlement of claims under the Telephone Consumer Protection Act (TCPA). The settlement encompassed three subclasses: (1) those who were called using an automated dialer; (2) those listed on the National Do-Not-Call (NDNC) registry; and (3) those who had asked the defendant not to call them, meaning they were on the defendant's internal do-not-call list. *Murray*, 2022 WL 17729630, at *1. These three types of claims faced dramatically different defenses— with one subclass having claims subject to a "definitive" defense, "which essentially extinguishes their value," *id.* at * 8—and had significantly different chances of success, *id.* at *5-6. But the settlement treated each member of the overall settlement class the same—they would receive $89 (later increased to $100), regardless of which subclass or subclasses they fell into. *Id.* at *1.

An objector to the settlement pointed out the obvious inequity that members of the NDNC subclass, who had "materially stronger and more valuable claims," were not treated equitably compared to members of the other subclasses. *Id.* at *2. The First Circuit agreed. In particular, the claims of the automated-dialer subclass were essentially worthless after a recent Supreme Court decision, yet these class members could receive the same payment as members of the NDNC subclass. *Id.* at *6-8. The parties argued that this difference did not affect the fairness of the settlement because there was overlap between the members of the subclasses, the parties were unable to demonstrate that this overlap actually existed. *Id.* at *7. The Court thus found that separate counsel were needed for each subclass to ensure that their interests were represented adequately in negotiating a settlement. *Id.* at *8-9.

But in issuing its decision, the First Circuit was clear that the need for separately represented subclasses only arises if differences between class members are "fundamental to the suit and . . . go to the heart of the litigation," or are "so substantial as to overbalance the common interests of the class members as a whole." *Id.* at *3. This is not the case here. While there are two subclasses in the settlement, the Rest Break Subclass and the Clean-Up Day Subclass, the settlement included a fair and reasoned apportionment of settlement proceeds between the two subclasses. The settlement considers not only what each Class Member's actual damages would be for the claims within each subclass, but it also accounts for the likelihood of success on the claims in both subclasses. As explained

in the Joint Motion to Give Notice to the Class of Proposed Settlement, ECF No. 57 at 10 n.9, the risks for class certification and damages discounts were much higher for the Rest Break Subclass, so the claims in that subclass were allocated a lower percentage of their maximum potential recovery while the claims in the Clean-Up Days Subclass were allocated close to their full maximum potential recovery. As such, "the relative values of all of those different claims are sufficiently clear-cut so as to enable a court to approve a proposed apportionment of a common fund among the claimants." *Murray*, 2022 WL 17729630, at *8. This is particularly true because here—unlike in *Murray*—the settlement negotiations were court-supervised during an all-day judicial settlement conference followed by six months of extensive "informed arm's-length negotiation." *Id.*

Further, unlike in *Murray*, the parties did not treat unequal claims alike and simply divide the settlement evenly between the subclasses. They instead took a reasoned approach—vigorously negotiated under court-supervision—that allocated 70% to the Rest Break Subclass and 30% to the Clean-Up Day Subclass. And while the likelihood of success for the Rest Break Subclass on obtaining class certification and avoiding all damages discounts was lower than that of the Clean-Up Day Subclass, the claims of the Rest Break Subclass were certainly far from being worthless, unlike the claims of the automated dialer subclass in *Murray*. 2022 WL 17729630, at *8.

In further contrast to *Murray*, the parties have confirmed that the majority of the Class Members overlap—179 of 273 Class Members, or 66%, are in both

4

subclasses. And 86% (235 of the 273) of Class Members either belong to both subclasses or to the Clean-Up Day Subclass, which received the higher percentage of its maximum recovery. This extreme overlap means the interests of a vast majority of Class Members are "more or less the same." *Murray*, 2022 WL 17729630, at *7. Further, the 38 Class Members with only Rest Break claims generally have relatively small claims because they did not work at Moody's for very long during the class period when the relevant pay policies were in effect (which is, in general, why they do not have claims for having participated in any of the annual Clean-Up Days). Catering too much to this small (14%) portion of the Class, with its even smaller percentage (under 1.4%) of the total rest break damages, would be focusing on differences that are "so obviously miniscule that the transactional costs of debating them would outweigh any resulting incremental increases in fairness." *Murray*, 2022 WL 17729630, at *4.

Lastly, it bears repeating that no Class Member objected to the settlement, let alone to the specific allocation between the subclasses. In sum, the following guidance from *Murry* controls here:

> Class actions in which all class members have materially common claims are unlikely to require separate representation. In such cases, any differences in claim value would likely be subject to objective calculation, or so obviously miniscule that the transactional costs of debating them would outweigh any resulting incremental increases in fairness. Therefore, such differences would be unlikely to "overbalance the common interests of the class members as a whole" in obtaining the largest settlement possible without running up transaction costs.

*Id.* at *4 (internal citations omitted).

## CONCLUSION

Thus, for the reasons stated in the Joint Motion for Final Approval of Class Settlement and at the Final Approval Hearing,[1] the parties ask the Court to grant final approval of the settlements, including of the Class Representative service awards.[2] Based on the Court's helpful guidance during the hearing on December 19, the parties are also submitting an amended proposed order on final settlement as an attachment to this brief, with both redlined and unmarked versions.

Date: December 23, 2022                    Respectfully submitted,

                                           /s/ David G. Webbert
                                           David G. Webbert, Esq.
                                           Braden A. Beard, Esq.

---

[1] At the Final Approval Hearing, the Court asked Class Counsel whether the settlement funds would be placed in an interest-bearing account before being distributed to the Class. After consulting with the Settlement Administrator, Simpluris, Class Counsel confirmed that the timeline under the Settlement Agreement for the settlement money to be deposited in and the distributed from the qualified settlement fund (QSF) is too compressed to use an interest-bearing account. Under the Settlement Agreement, ECF No. 57-1 ¶ 57, Moody's has 14 days from the final approval order to deposit the money into the QSF. Simpluris then has as little as 11 days to issue the payments to Class Members after Moody's deposits the money. *Id.* ¶ 58. And Simpluris has told Class Counsel that they have to transfer settlement funds within 5 business days before disbursement. So Simpluris may end up having the funds in the QSF for as few as 4 days.

[2] The First Circuit in *Murray* approved of class representative service awards, explaining that:

> Rule 23 class actions still require named plaintiffs to bear the brunt of litigation (document collection, depositions, trial testimony, etc.), which is a burden that could guarantee a net loss for the named plaintiffs unless somehow fairly shifted to those whose interests they advance. In this important respect, incentive payments remove an impediment to bringing meritorious class actions and fit snugly into the requirement of Rule 23(e)(2)(D) that the settlement "treats class members equitably relative to each other."

*Murray*, 2022 WL 17729630, at *10 (internal citation omitted).

        Johnson & Webbert, LLP
        160 Capitol St., Suite 3
        Augusta, ME 04330
        Telephone: (207) 623-5110
        dwebbert@work.law
        bbeard@work.law

        *Class Counsel for Plaintiffs*


        /s/ Richard G. Moon
        Richard G. Moon, Esq.
        Douglas P. Currier, Esq.
        Elizabeth T. Johnston, Esq.
        Verrill Dana, LLP
        One Portland Square
        Portland, ME 04101
        (207) 774-4000
        rmoon@verrill-law.com
        dcurrier@verrill-law.com
        ejohnston@verrill-law.com

        *Attorneys for Defendants*

## Certificate of Service

I hereby certify that on December 23, 2022, I electronically filed this document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ David G. Webbert*
David G. Webbert
