UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MATTHEW W. PURINTON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00296-JAW |
| | ) | |
| MOODY'S CO-WORKER OWNED, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON FINAL SETTLEMENT
## APPROVAL AND ATTORNEY'S FEES AND EXPENSES

Before the Court are the parties' Joint Motion for Final Approval of Class Settlement and Plaintiffs' Unopposed Motion for Approval of Attorney's Fees and Reimbursement of Case Expenses. A Fairness Hearing was conducted on December 19, 2022. For the reasons stated below, the motions are GRANTED in all respects.

## I.   BACKGROUND

Named Plaintiffs Matthew Purinton, Jeffrey Morin, and Jacob Cyr, and other employees of Defendants did not record 15-minute rest breaks as hours worked on their time sheets under a written employment policy maintained by Moody's authorizing hourly employees to take two unpaid 15-minute breaks during the day. As part of that written policy, which was reviewed and edited by an HR consulting firm, Moody's instructed certain employees not to include these two 15-minute rest breaks when recording their compensable hours on their daily timesheets.[1] Moody's

---

[1]     ECF No. 46 ¶¶ 2-3.

also had a longstanding practice that employees participate in an annual Saturday "Clean Up" day around the second or third week of October, for which they were given the day after Thanksgiving as a paid day off, instead of being paid on their next scheduled pay day.

On August 14, 2020, Matthew Purinton filed this Action for himself and 273 other Moody's employees who were non-exempt, hourly employees of Moody's alleging two counts of unpaid wages and overtime. On December 4, 2020, Jeffrey Morin and Jacob Cyr became Named Plaintiffs as part of the First Amended Complaint. Named Plaintiffs and Class Counsel conducted a thorough and diligent investigation of the relevant legal and factual claims concerning both liability and damages, including retaining an expert witness to analyze damages owed to each of the Class Members, requesting and producing documents and information in informal discovery, and propounding written interrogatories and requests for production of documents. In April 2021, they also retained a nationally recognized mediator, Mark Irvings, and made major settlement efforts under his auspices until December. Then, beginning with a full-day Judicial Settlement Conference on January 10, 2022, Magistrate Judge Nivison oversaw over five months of vigorous negotiations between the parties at arm's length and ultimately achieved this Court-supervised proposed settlement of the putative class action claims for unpaid wages.

On October 18, 2022, the Court authorized Class Counsel to send notices of the proposed settlement to potential Class Members. ECF No. 60.[2] After conducting a fairness hearing on December 19, 2022, as required by Federal Rule of Civil Procedure 23(e), the Court concludes that the Settlement is fair, reasonable, and adequate, and appropriate for final certification for settlement purposes, that the attorney's fees and expenses requested by Class Counsel are reasonable, and that the service awards to the three Named Plaintiffs are warranted and reasonable.

## II.   DISCUSSION

### A.   The Settlement is Fair, Reasonable, and Adequate

Under Rule 23(e)(2), the Court may approve a settlement that is fair, reasonable, and adequate. In general, courts will presume that a settlement is reasonable if the parties negotiated at arm's length and conducted sufficient discovery. *See In re Pharm. Indus. Avg. Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009). A district court has "considerable discretion in approving a class action settlement, given the generality of the standard and the need to balance a settlement's benefits and costs." *Noll v. Flowers Foods Inc.*, No. 1:15-CV-00493-LEW, 2022 WL 1438606, at *5 (D. Me. May 3, 2022) (cleaned up). "The court's role in reviewing a proposed settlement agreement is effectively that of a fiduciary for the class members, a duty which obtains whether or not there are objectors or opponents to the proposed settlement." *Id.* (cleaned up).

---

[2]    This Order incorporates by reference the definitions in the Settlement Agreement and Release, *see* ECF No. 57-1, and all terms defined therein have the same meaning in this Order as set forth in the Settlement Agreement and Release.

Rule 23(e)(2) lists specific factors for evaluating whether a class action settlement is fair and reasonable:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

All of the relevant factors favor final approval of the proposed settlement. On October 18, 2022, the Court conducted a preliminary analysis of the relevant factors and determined that the "proposed settlement likely is fair, reasonable, adequate, and is in the best interest of the settlement class" and "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)." ECF No. 60 at 2. Since that time, the Court-approved Notice of the proposed Settlement has been sent to the 274 Settlement Class Members, not a single Class Member objected, and only one opt-out request has been received, further supporting final approval.

First, Class Counsel and Class Representatives have adequately represented the Class. FED. R. CIV. P. 23(e)(2)(A). Class Representatives Matthew Purinton, Jacob Cyr, and Jeffrey Morin share the core interests of the Class Members: they were all non-exempt, hourly employees subject to policies of Moody's (1) to take unpaid rest breaks and (2) to participate in "Clean-Up day" on a Saturday every October without

recording their time and not receiving pay until Moody's paid them for their day off on the Friday after Thanksgiving. Class Representatives have no fundamental conflicts of interests with the proposed class that would prevent them from vigorously pursuing the interests of the class. And the three named Class Representatives have ably represented the class over the past two years by maintaining close contact with Class Counsel, responding to requests for information and documents, and preparing for and attending the January 10, 2022 judicial settlement conference.

Likewise, consistent with their past record as highly experienced counsel in class action cases, Class Counsel have demonstrated the adequacy of their representation through vigorous prosecution of this case. Class counsel David Webbert is highly experienced in class action litigation and has represented the Class Members zealously, devoting substantial time and resources to this Action.

Second, the proposed Settlement was negotiated at arm's length. FED. R. CIV. P. 23(e)(2)(B). This Settlement was negotiated by qualified counsel, with the able assistance and supervision of a Judicial Settlement Officer of this Court, Magistrate Judge Nivison, over a full-day Judicial Settlement Conference. A resolution was not reached, but the parties' negotiations continued for the next five months with further assistance of Magistrate Judge Nivison, that finally resulted on June 1, 2022, with a Court-supervised, class-wide tentative settlement. Further, before a proposed settlement was reached, the parties engaged in a thorough investigation of their respective legal claims, defenses, and damages at issue. Both parties requested and produced documents and information during discovery. In addition, Plaintiffs

5

retained a damages expert to analyze each Class Member's unpaid wages for the period in question, and propounded written interrogatories and requests for production of documents upon Defendants. There is no reason to suspect collusion that would undermine the Settlement's fairness. The overall picture is one of fair, arm's-length negotiations.

Third, the relief provided to the Settlement Class is adequate, particularly when compared to the costs, risks, and delays of continued litigation. FED. R. CIV. P. 23(e)(2)(C). The proposed Settlement provides significant monetary relief to the Settlement Class Members: even after requested attorney's fees, expenses, service awards, and costs of settlement administration are deducted, the net Settlement payment to the Settlement Class of $1,407,464.13 represents about 69% of the total claimed unpaid wages for the class (which are about $2,042,219). And if this Action is not resolved now, the costs, risks and delays of proceeding with litigation are considerable. Continued litigation would have required massive additional time and expense for each side—likely including a vigorously contested motion for class certification, depositions, and substantial additional document discovery, cross-motions for summary judgment, trial, and possible appeals—with no guarantee of success. And if the matter had proceeded to trial, the non-prevailing party would likely have appealed the statutory interpretation issues, further delaying receipt of any money by the Class Members. Thus, both sides face significant risks and costs moving forward and have a strong interest in avoiding the uncertainty and delay of

further litigation. The Settlement reflects a fair compromise of the claims involved, considering these risks.

Fourth, the Settlement treats the Class Members fairly and equitably relative to each other, FED. R. CIV. P. 23(e)(2)(D), meaning that relief is apportioned between Class Members in a way that "takes appropriate account of differences among their claims," 2018 Advisory Committee Note to Fed. R. Civ. P. 23. The monetary payments to each Class Member fairly accounts for their potential hours worked during both rest breaks and clean-up days. Each Class Member's share is calculated individually based on Defendants' records of the hours each Class Member worked for Moody's.

The Court asked the parties to brief whether a recent decision by the First Circuit, *Murray v. Grocery Delivery E-Services USA, Inc.*, No. 21-1931, 2022 WL 17729630 (1st Cir. Dec. 16, 2022), affects the Court's analysis of whether to approve the settlement in this case. In their joint brief (ECF No. 69), the parties explained their view that the *Murray* decision does not limit, and in many ways confirms, the Court's ability to approve this settlement. The Court agrees. *Murray* found that a proposed class action settlement could not be approved until the three subclasses had separate representation when (1) one of the subclasses had claims subject to a "definitive" defense, "which essentially extinguishes their value," *id*. at * 8, yet the proposed settlement had them receiving equal shares with the subclasses having viable claims; and (2) counsel could neither back up their potentially saving point that because "the groups of class members 'overlapped,' their interests were more or less the same," *id*. at *7; (3) nor could they articulate a "clear-cut" explanation for the

7

relative value of the separate claims of the subclasses. On the other hand, this proposed settlement does not suffer from any of those fatal flaws: (1) no "definitive" defense applies to the claims of either subclass; (2) the record shows that a large majority of the class members belong to both subclasses; and (3) counsel has articulated a "clear-cut" explanation for the relative value of the claims. In short, the Settlement fairly apportions payment equitably among the Class Members.

The fairness of the settlement distribution is supported by the favorable reaction of the Class Members. The Class Administrator sent the approved Class Notice to 274 Class Members, there have been no objections, and only one opt-out request was filed. So settlement payments are on track to be distributed to 273 Class Members. And the proposed method for distributing settlement payments to the Class are likely to be highly effective, as no claims form or other response is required from Class Members before they will receive their payment.[3]

In sum, the Court finds the proposed Settlement fair, reasonable, and adequate under Rule 23.

## B.    For Settlement Purposes, the Action Is Finally Certified under Rule 23

An action can be settled as a class action that binds absent class members only if the Court certifies "the class for purposes of judgment on the proposal." FED. R. CIV.

---

[3]     During the Fairness Hearing on December 19, 2022, Class Counsel explained the process for addressing the Class Members with outstanding loans to Moody's, as described in the Court-approved Settlement Agreement, 57-1 at ¶ 33, and Notice of Settlement, ECF No. 574 at 2. That process will provide the 20 Class Members who have outstanding loans a fair opportunity to contest the amount that Moody's believes they owe, and only the amount the Class Members acknowledge is owed will be paid out of their settlement proceeds. Thus, neither the Court nor the Class Administrator will have to resolve or otherwise address any disputes or disagreements regarding loan amounts due.

P. 23(e)(1)(B)(ii). Certification of an action requires that it meet the requirements of Rule 23(a) and one of the types of class actions described in Rule 23(b) for settlement purposes. *Id.*; *Michaud v. Monro Muffler Brake, Inc.*, No. 2:12-CV-00353-NT, 2015 WL 1206490 (D. Me. Mar. 17, 2015) at *2. This Action satisfies the requirements of Rule 23 such that it may be certified for settlement purposes.

Plaintiffs ask the Court to certify a settlement class of all individuals who were a non-exempt, hourly employee of Moody's and (1) worked one or more annual Clean-Up day at any time from 2014 through 2019, or (2) worked at one or more of the following Moody's locations at any time between August 14, 2014, and February 29, 2020: Augusta, Biddeford, Gorham, Lewiston, Portland, Sanford, and Scarborough; or at the Wells location at any time between October 1, 2019, and March 31, 2020.

This Court has already approved notice of the proposed Settlement to the Class based on a determination that "it is likely to be able to grant class certification because the requirements of Rule 23(a) and 23(b)(3) have been met." ECF No. 60 at 2; *see* FED. R. CIV. P. 23(e)(1)(B)(ii). The Court's determination that it will likely be able to certify the proposed class under Rule 23 has now been further supported by the absence of any objections in response to the notice to the Class.

Under Rule 23(a), (1) the class of 274 former employees is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class, given that each Class Member would have the same substantive claim for whether Defendants' policies violated wage and hour laws by (a) authorizing hourly employees to take two unpaid 15-minute breaks daily and (b) requiring

employees to work a "Clean-Up day" on a Saturday every October without recording their time and not paying employees until more than a month later, when it paid them for their day off on the Friday after Thanksgiving; (3) for the same reason, the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class, as the interests of the three named Plaintiffs to recover unpaid lost wages are aligned with the interests of the putative Class Members. FED. R. CIV. P. 23(a).

In addition, Plaintiffs have demonstrated that certification is appropriate under Rule 23(b)(3). The legal claims and defenses at the core of this case, concerning whether Moody's violated wage and overtime laws, are common to the class and predominate over any individualized issues. Moreover, class action is the superior method of adjudication of this dispute, particularly given the relatively small potential recovery for any individual Class Member and the lack of any other pending claims by Class Members. FED. R. CIV. P. 23(b)(3).

**C.   The Proposed Service Awards to Named Plaintiffs Are Appropriate.**

"Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, the public nature of a collective action filing, and any other burdens they sustain." *Noll v. Flowers Foods Inc.,* No. 1:15-CV-00493-LEW, 2022 WL 1438606, at *9 (D. Me. May 3, 2022) (quotation omitted) (approving payment of a $10,000 service bonus to named plaintiff). "An

10

incentive or service award can be appropriate to encourage or induce an individual to participate in the suit." *Scovil v. FedEx Ground Package Sys., Inc*., No. 1:10-CV-515-DBH, 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014).

Class Counsel has proposed, and neither Defendants nor any Class Members have objected to, service awards in an aggregate amount of $45,000 to the three Named Plaintiffs. The Court finds these proposed service awards appropriate in light of the time each of the Named Plaintiffs devoted to the case and the significant role they played in facilitating settlement.

### D.     The Requested Attorney's Fees and Expenses Are Reasonable

Under Rule 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Plaintiffs' counsel requests that the Court use the First Circuit's preferred "percentage of fund" method to award the attorney's fees in this case, citing our precedents using the POF method because the First Circuit has approved of "the percentage of the fund method [as] the prevailing approach used in common fund cases" because of the "distinct advantages for using it in such cases." *See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995). Plaintiffs' counsel has requested attorney's fees of one-third fee of the total $2,250,00 Qualified Settlement Fund,[4] or $750,000, and $47,535.87 in

---

[4]     At the Final Approval Hearing on December 19, 2022, Class Counsel confirmed that all costs associated with structuring the payment of attorney's fees will be borne solely by Class Counsel and not the Class. *See* ECF No. 66 at 5 n.3.

reimbursement for expenses. The Court finds Plaintiffs' requested fees and expenses reasonable.

First, Plaintiffs' counsel has represented that all three Named Plaintiffs entered into legal services agreements providing for payment to Class Counsel of a one-third contingent fee of the recovery, plus reimbursement of all case expenses.

Second, a one-third contingent fee is common in class action employment and civil rights cases. *See, e.g.*, *Conant v. FMC Corp.*, No. 2:19-CV-00296-JDL (D. Me. Sept. 1, 2020), ECF No. 42 (approving as reasonable an award of attorney's fees of one-third of common settlement fund, which was $695,000, plus $20,649.30 in expenses, in unpaid wages class action); *Scamman v. Shaw's Supermarkets, Inc.*, No. BCD-CV-2018-09 (Super. Ct. Apr. 26, 2019) (approving as reasonable attorney's fee award of one-third of common fund or $483,333.33, plus $50,000 in expenses); *O'Connor v. Oakhurst*, 2:14-00192-NT, 2018 WL 3041388 (D. Me. June 19, 2018) (approving as reasonable an award of attorney's fees of one-third of common fund, or $1.67 million in fees, plus $50,000 in expenses, in state law unpaid wages class action)**;** *Curtis v. Scholarship Storage Inc.,* No. 2:14-cv-303-NT, 2016 WL 3072247, at *3-4 (D. Me. May 31, 2016) (awarding one-third fee in wage-and-hour class action); *Scovil,* 2014 WL 1057079, at * 5 (D. Me. Mar. 14, 2014) (awarding one-third of common fund in wage class action, and citing multiple settlements in accord).

Third, this case was complex and uncertain. Plaintiffs engaged in thorough investigation of the claims, defenses, and damages at issue, and participated in extended settlement efforts with nationally recognized mediator Mark Irvings for

over seven months, followed by one full day of mediation with a Judicial Settlement Officer of this Court, Magistrate Judge Nivison, with continued negotiations for an additional five months with further assistance of Magistrate Judge Nivison.

Fourth, the $2,250,000 Settlement is an excellent result and is well within the range of expected recovery if this case had proceeded to trial. If the Settlement is approved, the Class Members will receive 69% of the total claimed unpaid wages for the class.

Fifth, Class Counsel's fee petition indicates that they have represented Named Plaintiff Matt Purinton since October 2019 and the other two Named Plaintiffs for over two years, while maintaining close contact with each of the Named Plaintiffs throughout their representation.

Sixth, Class Counsel are highly qualified and experienced in complex litigation and have demonstrated zealous advocacy for their clients in this and other class actions.

And seventh, the fee petition indicates that Class Counsel's lodestar is over $500,000. ECF No. 67. Class Counsel filed this Action on a wholly contingent basis, accepting the certain risk they would not be paid unless and until the case was favorably resolved, and taking on the substantial risk that they would not be compensated for their time at all.

As agreed to in the parties' Settlement Agreement, ECF No. 57-1 ¶ 36, Class Counsel may elect to have all, part, or none of its attorney's fees award paid in periodic payments through a structured settlement arrangement entered into before

payment of such fees to Class Counsel. All fees awarded to Class Counsel to be so structured will be paid by the Settlement Administrator, out of the Settlement Fund to an assignment company or companies in accord with appropriate assignment and release agreements ("Assignment Agreements"). Class Counsel has no present right to payment of any structured fees that are the subject of Assignment Agreements. The Settlement Administrator will have the authority to execute documents and take such actions as may be necessary to effectuate the assignment and payment of fees under any Assignment Agreement.

In sum, the Court finds that Class Counsel's request for attorney's fees and expenses is reasonable.

### E.    Final Approval Is Appropriate under the Class Action Fairness Act

Under the Class Action Fairness Act ("CAFA"), an order granting final approval of a proposed settlement of a class action "may not be issued earlier than 90 days after" the defendant serves required CAFA notices on the appropriate government officials. 28 U.S.C. § 1715(d). Defendants served CAFA notices on the appropriate government officials on July 11, 2022, and October 14, 2022—more than 90 days ago. None of those officials have filed an objection to the proposed settlement. Final approval is therefore appropriate under CAFA.

## III.    CONCLUSION

For the reasons stated above, the Plaintiffs' motions are GRANTED in all respects. The Court APPROVES final settlement of all claims in this matter,

including the service awards to the Named Plaintiffs. The Court GRANTS Class Counsel's motion for attorney's fees and expenses.

The Court GRANTS the parties' motion to certify this Action as a class action for settlement purposes only and because the Action has been certified as a class action under Federal Rule of Civil Procedure 23(b)(3), all Settlement Class Members who did not actively opt-out of the case (and the Settlement thereof) will be bound by the dismissal with prejudice on the merits, and by the release of claims described in the Settlement Agreement.

The case is DISMISSED with prejudice; provided, however, that, without affecting the finality of this Judgment and Order of Dismissal with Prejudice, the Court hereby retains exclusive and continuing jurisdiction for purposes of supervising, administering, implementing, interpreting, and enforcing this Judgment and Order of Dismissal with Prejudice, as well as the Settlement Agreement, including administration and distribution of payment thereunder.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
U.S. DISTRICT JUDGE

Dated this 12th day of January, 2023